## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **RICHARD GRISSOM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case. No. 20-CV-03163-SAC** |
| | ) | |
| **JORDAN BELL,** *et al*. | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In accordance with D. Kan. Rules 7.1(a) and 7.6, Defendants Jordan Bell, Daniel Schnurr, Clay Vanhoose, Raymond Stiggins, Shawn Ashford, Alan Carter, Harold Alcorn, Nicholas Woodman, Dusty Michels, Micah Eash, Christopher Loya, John Andresen, Thomas Jackson, Keon Jackson, Ariel Noble, Marc Morgan, Devin Flowers, Phillip Kern, Cody Reinert, and Cole Derringer, by and through Assistant Attorney General, Michael J. Duenes, submit this Memorandum is Support of their Motion to Dismiss, or in the Alternative, for Summary Judgment pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) or Fed. R. Civ. P. 56. Defendants respectfully request that this motion be granted and this action be dismissed, or in the alternative, judgment be granted in Defendants' favor. Defendants state the following in support.

### NATURE OF THE CASE

Plaintiff Richard Grissom, an inmate currently incarcerated at Lansing Correctional Facility (LCF), alleges that in March and April of 2020, Defendants violated his Eighth Amendment right against cruel and unusual punishment, either by ordering prison staff to use, or themselves using, inadequate handcuffs to restrain him 34 times, thereby causing him physical pain through the use of excessive force. (Doc. 1 at 10). Specifically, Grissom claims Defendants

Schnurr, Vanhoose, Stiggins, Bell, and Ashford implemented a policy change and ordered their staff to start using regular-sized handcuffs to restrain him, instead of using the medically-approved large cuffs with double-cuffing as they had done previously. Grissom argues that this was a deliberate attempt to cause him "unnecessary wanton pain[.]" *Id.* Grissom also claims the officers who escorted him to various places used excessive force in restraining him with handcuffs that were "too short in length and/or two small in diameter[.]" *Id.*

Grissom further alleges that Hutchinson Correctional Facility (HCF) administration and Defendants Schnurr, Vanhoose, Stiggins, Bell, and Ashford knew of Grissom's pending lawsuit against El Dorado Correctional Facility (EDCF) officials and the upcoming deadline for the *Martinez* Report. In response, says Grissom, they abruptly changed the policy of restraining him with medically-approved handcuffs and revoked his daily showers as retaliation against him. *Id.* According to Grissom, this "violates the [F]irst [A]mendment and his liberty interest." *Id.*

Grissom brings his cause of action under 42 U.S.C. § 1983 and asks for $50,000 in punitive damages against HCF administration, $50,000 in compensatory damages—jointly and severally—against HCF administration, and $1,000 in compensatory damages—jointly and severally—for 34 counts of excessive force by escorting officers (totaling $34,000). (Doc. 1 at 1, 12).

Contrary to Grissom's claims, the handcuff policy changes were focused on effectively securing inmates while avoiding the damage to handcuffs caused by double-cuffing, and not on retaliating against Grissom for his lawsuit against EDCF. Indeed, there is no evidence showing that any of the defendants were aware of his lawsuit against EDCF when they implemented the handcuff policy changes. No evidence suggests HCF administration and staff sought to cause Grissom any discomfort, and he was never restrained with regular handcuffs for more than brief periods of time. Moreover, there is no documentation of Grissom making a medical complaint or

receiving treatment for pain involving his wrists or shoulders, other than his unsubstantiated assertion that he was prescribed a cream to remedy his ostensibly pulled shoulder.

Regarding the revocation of Grissom's daily showers, there was no medical order directing him to be provided daily showers and no medical need for doing so. Further, Grissom never filed a grievance on this point, so he failed to exhaust his administrative remedies.

On the undisputed facts and relevant law, Grissom's allegations fail to state a claim upon which relief can be granted, and Defendants are entitled to dismissal. Alternatively, the Court should grant summary judgment for Defendants on Grissom's daily shower claim and also find that Grissom has failed to show either an Eighth Amendment or a First Amendment violation.

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## NO GENUINE ISSUE EXISTS

1.      Richard Grissom is a 5'11", 215-pound inmate who was housed at HCF during March and April, 2020. (KASPER Report, attached as Exhibit A at 1, subject to judicial notice as per Fed. R. Evid. 201 and *O'Toole v. Northrop Grumman Corp.,* 499 F.3d 1218, 1225 (10th Cir. 2007)).

2.      Since February 22, 2018, Grissom has had a medical order for double cuffing and larger handcuff size. (Doc. 18-20 at 3; Doc. 18-26 at 3; Doc.18-27 at 15-16).[1]

3.      Major Vanhoose was Chief of Security at HCF both prior to Grissom's arrival there and during the time period of which Grissom complains. (Doc. 18-1 at 2; Doc. 18-3 at 1, Vanhoose affidavit at ¶ 1).

4.      Vanhoose understood that some inmates at HCF had difficulty putting their hands behind their backs comfortably while being restrained with one set of regular-sized handcuffs, so these inmates needed to be double cuffed. (Doc. 18-3 at 1, Vanhoose affidavit at ¶ 2).

---

[1] All affidavits are attached as Exhibit B.

5.      Double-cuffing, however, was damaging the handcuffs, causing them to wear out prematurely. (Doc. 18-3, Vanhoose affidavit at ¶ 8; Doc. 18-4, Stiggins affidavit at ¶ 2; Doc. 18-5 at 2, Bell affidavit at ¶ 4).

6.      In the months prior to March 2020, Grissom was being handcuffed with ankle shackles. (Doc. 1 at 5 [¶ 3]; Doc. 18-3, Vanhoose affidavit at ¶ 3; Doc. 18-5, Bell affidavit at ¶ 5; Doc. 18-6, Ashford affidavit at ¶ 3).

7.      Grissom never had any kind of order from HCF administrative staff directing ankle shackles to be used to restrain his hands; only an order for large handcuffs and extra links. (Doc. 1 at 5 [¶ 3]; Doc. 18-6 at 1, Ashford affidavit at ¶ 3; Doc. 18-8 at 1, Alcorn affidavit at ¶ 2).

8.      For security reasons, and because no HCF policy authorized it, HCS staff stopped using ankle shackles to handcuff Grissom. (Doc. 18-3, Vanhoose affidavit at ¶ 4; Doc. 18-5, Bell affidavit at ¶ 5; Doc. 18-6, Ashford affidavit at ¶ 3; Doc. 18-8 at 1, Alcorn affidavit at ¶ 2; Doc. 18-12 at 1, Loya affidavit at ¶ 3).

9.      After considering options to both accommodate those inmates who could not be comfortably cuffed behind their backs and stop the damage that double-cuffing was doing to handcuffs, it was decided that regular-sized handcuffs with two extra links would be used at HCF in place of double cuffing. (Doc. 18-3 at 2, Vanhoose affidavit at ¶ 5; Doc. 18-4 at 2, Stiggins affidavit at ¶ 6; Doc. 18-5 at 2, Bell affidavit at ¶ 6; Doc. 18-20, Lundry affidavit at ¶ 4; Doc. 18-27 at 4, Exh. 27 to *Martinez* Report at 4).

10.     HCF staff recognized that Grissom had large wrists. (Doc. 18-3, Vanhoose affidavit at ¶¶ 3, 6; Doc. 18-4, Stiggins affidavit at ¶ 4; Doc. 18-5, Bell affidavit at ¶ 5).

11.     HCF staff also recognized that Grissom's large wrists and big shoulders made larger handcuffs with extra links preferable, but the larger handcuffs do not come with extra links.

(Doc. 1 at 5; Doc. 18-3, Vanhoose affidavit at ¶¶ 2-3, 6; Doc. 18-4, Stiggins affidavit at ¶¶ 4-5; Doc. 18-5, Bell affidavit at ¶¶ 5-7; Doc. 18-6 at 2, Ashford affidavit at ¶¶ 5, 7; Doc. 18-26 at 3; Doc. 18-27 at 4).

12.     As of early March, 2020, Grissom was approved to be handcuffed with regular-sized handcuffs with extra links, but it developed that these handcuffs could not comfortably accommodate his large wrists and big shoulders. (Doc. 1-1 at 3; Doc. 18-3 at 2, Vanhoose affidavit at ¶ 6; Doc. 18-4 at 1, Stiggins affidavit at ¶ 5; Doc. 18-27 at 17, 35).

13.     Ultimately, Grissom was approved to be restrained by double cuffing him with larger handcuffs. (Doc. 18-3 at 2, Vanhoose affidavit at ¶ 6; Doc. 18-4 at 2, Stiggins affidavit at ¶ 6; Doc. 18-5 at 2, Bell affidavit at ¶ 7; Doc. 18-6 at 2, Ashford affidavit at ¶ 9).

14.     Between March 1, 2020, and April 15, 2020, Grissom filed emergency grievance number BA00018497 and property claim number BA0008929, both relating to the use of handcuffs. (Doc. 18-19, Smith affidavit at ¶ 3; Doc. 18-26 at 1; Doc. 18-26 at 3; Doc. 18-27 at 5).

15.     On March 27, 2020, the Secretary of Corrections for the Kansas Department of Corrections (KDOC) responded to Grissom's emergency grievance, concluding that Grissom's claim did not constitute an emergency and forwarding Grissom's grievance to the HCF warden. (Doc. 18-27 at 9).

16.     On April 20, 2020, HCF Warden Dan Schnurr addressed Grissom's emergency grievance, stating that Unit Team Manager (UTM) Bell had informed Grissom that he should be double-cuffed with larger handcuffs when restrained. (Doc. 18-5 at 2, Bell affidavit at ¶¶ 7-8; Doc. 18-27 at 4).

17.     Grissom appealed his emergency grievance to the Secretary of Corrections. (Doc. 18-27 at 1).

18.     On May 7, 2020, the Secretary responded to Grissom's appeal, affirming the response provided by HCF staff. (Doc. 18-27 at 1).

19.     Between October 2019 and April 2020, Grissom did not receive treatment for any shoulder injury related to the use of handcuffs. (Doc. 18-20 at 2, Lundry affidavit at ¶ 5).

20.     Grissom was prescribed Capsaicin Cream, but no documentation exists as to why it was prescribed. (Doc. 1-1 at 7; Doc. 18-20 at 5 (3/19/20 medical assessment/plan); Doc. 18-26 at 3, 5).

21.     Grissom received no evaluation on any long-term chronic care stemming from his being handcuffed. (Doc. 18-20 at 2, Lundry affidavit at ¶ 5).

22.     Beginning on October 17, 2019, Grissom was granted daily showers (excluding Wednesdays) on a temporary basis. (Doc. 1-1 at 29; Doc. 18-5 at 1, Bell affidavit at ¶ 2).

23.     Grissom's permission to take daily showers was not based on any medical order. (Doc. 18-5 at 1, Bell affidavit at ¶ 3; Doc. 18-6 at 2-3, Ashford affidavit at ¶¶ 10-11; Doc. 18-20 at 2, Lundry affidavit at ¶ 6).

24.     Because there was no medical order supporting daily showers for Grissom, the practice was stopped in early March of 2020. (Doc. 18-5 at 1, Bell affidavit at ¶ 3; Doc. 18-6 at 2-3, Ashford affidavit at ¶¶ 10-11; Doc. 18-7 at 2, Carter affidavit at ¶ 8).

25.     Grissom never submitted any grievance report forms or property claims pertaining to the issue of daily showers. (Doc. 18-19 at 1, Smith affidavit at ¶ 3).

26.     Defendant Schnurr did not issue any orders regarding Grissom's showering frequency. (Doc. 18-2 at 1, Schnurr affidavit at ¶ 3).

27.     Defendant Vanhoose does not remember anything about Grissom filing a lawsuit against officials at EDCF. (Doc. 18-3 at 2, Vanhoose affidavit at ¶ 8).

28.     Defendant Stiggins does not remember anything about Grissom filing a lawsuit against officials at EDCF. (Doc. 18-4 at 2, Stiggins affidavit at ¶ 7).

29.     Defendant Carter does not remember anything about Grissom's filing a lawsuit against officials at EDCF. (Doc. 18-7 at 2, Carter affidavit at ¶ 10).

30.     Defendants Alcorn, Ringler-Woodman, Michels, Eash, Loya, Andresen, Noble, Flowers, Kern, Jackson (Keon), and Derringer did not know that Grissom had filed a lawsuit against officials at EDCF. (Doc. 18-8 at 2, Alcorn affidavit at ¶ 7; Doc. 18-9 at 2, Ringler-Woodman affidavit at ¶ 7; Doc. 18-10 at 2, Michels affidavit at ¶ 7; Doc. 18-11 at 2, Eash affidavit at ¶ 7; Doc. 18-12 at 2, Loya affidavit at ¶ 8; Doc. 18-13 at 2, Andresen affidavit at ¶ 6; Doc. 18-15 at 1, Noble affidavit at ¶ 5; Doc. 18-17 at 2, Flowers affidavit at ¶ 8; Doc. 18-18 at 2, Kern affidavit at ¶ 6; Doc. 18-21 at 2, Jackson (Keon) affidavit at ¶ 7; Doc. 18-28 at 1, Derringer affidavit at ¶ 3).

31.     Defendant Jackson (Thomas) was not working in segregation in March and April, 2020, when Grissom was housed there. (Doc. 18-14 at 1, Jackson (Thomas) affidavit at ¶ 1).

32.     Defendant Morgan has not worked in the HCF central unit for the past eight years and has never worked in segregation where Grissom was housed. (Doc. 18-16 at 1, Morgan affidavit at ¶ 1).

## QUESTIONS PRESENTED

I.     As a matter of law, does the Eleventh Amendment bar Grissom's § 1983 claims against the state officials in their official capacity?

II.    Are Defendants entitled to summary judgment on Grissom's daily showers complaint because he failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act (PLRA)?

III.    Do Grissom's handcuffing and daily shower complaints fail to state a plausible First Amendment retaliation claim?

IV.    Does Grissom's handcuffing complaint fail to state a plausible Eighth Amendment claim?

V.    Are Defendants entitled to qualified immunity because their actions did not violate clearly established law of which reasonable state officials would have known?

VI.    Is Grissom entitled to punitive damages when he cannot show that any Defendant's conduct was motivated by evil intent or that any Defendant acted with reckless or callous indifference to his federal constitutional rights?

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss*

A complaint must contain enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court need not accept as true those allegations that state only legal conclusions. *Id*. Under this standard, a plaintiff's claim must cross the line from "conceivable to plausible," and "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal

claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Conor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). A *pro se* litigant is expected to construct his or her own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this circuit. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840-41 (10th Cir. 2005).

### *Summary Judgment Standard*

Summary judgment is required when pleadings, affidavits, and any discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine issue exists, courts will view evidence in the light most favorable to the nonmoving party and will accept only reasonable inferences. *See Allen v. Muskogee*, 119 F.3d 837, 839-40 (10th Cir. 1997).

However, the nonmoving party cannot create a genuine issue of fact by making allegations that are clearly unsupported by the record as a whole. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way[,]" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When there is no genuine dispute of material fact on an essential element of the nonmovant's claim, then summary judgment must issue in the moving party's favor. *See Sports Unlimited, Inc. v. Lankford Enterprises, Inc*., 275 F.3d 996, 999 (10th Cir. 2002).

### *Qualified Immunity Standard*

In qualified immunity cases at summary judgment, a "plaintiff must demonstrate on the

facts alleged … that the defendant violated his [or her] constitutional or statutory rights," and "that the right was clearly established at the time of the alleged unlawful activity." *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). The court has discretion to analyze the two prongs in whatever order "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018). Simply put, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *see Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (the clearly established right being "sufficiently clear that every reasonable official would have understood that what he is doing violates that right"); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (Clearly established case law must answer the "constitutional question beyond debate."). A defendant does not bear the traditional burden to show the absence of a triable issue unless the plaintiff meets both elements. *Gutteridge*, 878 F.3d at 1238.

Federal precedent offers two avenues for determining whether challenged conduct violates clearly established constitutional rights: "The plaintiff must show there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers, but in the light of pre-existing law the unlawfulness must be apparent." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal citations and quotations omitted).

The Supreme Court recently re-emphasized that "the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). "This Court has repeatedly told courts ... not to define clearly established law at a high level of generality." *Id*. If a plaintiff fails to satisfy either prong of the qualified immunity test, a court must

grant the defendant qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

I.     **As a matter of law, the Eleventh Amendment bars Grissom's § 1983 claims against the state officials in their official capacity.**

Grissom's claims against Defendants in their official capacities must be dismissed. "The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity." *Id.* As employees of KDOC, all of the KDOC Defendants share the state's immunity for suits against them in their official capacity for money damages. *See White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996).

There is a narrow exception to sovereign immunity under *Ex parte Young*, 209 U.S. 123 (1908), which allows a plaintiff to seek prospective injunctive relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Grissom's requests for relief do not fall under this exception, and he does not request prospective injunctive relief. While he alleges past incidents of excessive force and retaliation in March and April of 2020, he does not allege any ongoing violations to merit prospective relief.

Also, state officials sued in their official capacities are not "persons" amenable to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Grissom's claims against the KDOC Defendants in their official capacities must be dismissed.

II.    **Defendants are entitled to summary judgment on Grissom's daily showers complaint because he failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act (PLRA)?**

Grissom alleges "there were no issues" with his daily showers within the five-month period he was allowed to take them, "but within a two day period[,] decisions by the Warden, Major

11

Vanhoose, Lt. Stiggins and UTM Bell placed Plaintiff in painful physical predicaments suddenly." (Doc. 1 at 6). To the extent he alleges he was denied daily showers in retaliation for his lawsuit against officials at EDCF, it will be addressed under **Issue III** below. But at the outset here, Grissom's claim fails because he did not exhaust his administrative remedies under the PLRA.

The PLRA requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, No. 19-7060, 2020 WL 3120997, at *1 (10th Cir. June 12, 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 Fed. Appx. 682, 684 (10th Cir. 2011).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. 44-15 101 *et seq*., and applies "to a broad range of matters that directly affect the inmate, including … [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and … actions by employees and inmates, and incidents occurring within the facility." K.A.R. 44-15-101a(d). Grissom's § 1983 claim falls under this regulation because the offending conduct stems from Grissom's complaint about a policy within the jurisdiction of HCF or from the actions of HCF employees. *See Rigney v. Trapp*, No. 20-3106-SAC, 2021 WL 5833932, at *4 (D. Kan. Dec. 9, 2021).

An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden of the facility; and (4) appeal to the secretary of corrections. *See* K.A.R. 44-15-101(b), (d); 44-15-102(a)-(c).

While Grissom has no burden to specially plead or demonstrate exhaustion in his complaint, *see Jones*, 549 U.S. at 216, here there is no evidence he attempted an informal resolution with unit team members or that he submitted a grievance report form concerning showers. (Doc. 18-19 at 1). Grissom filed an Emergency Grievance with the Secretary of Corrections on March 17, 2020, in which he notes that CSI Ashford had him removed from daily showers. (Doc. 1-1 at 16-17, 19). The Secretary deemed Grissom's grievance a non-emergency and forwarded it to Warden Schnurr for review and response in accordance with the standard KDOC grievance process. (Doc. 1-1 at 20). In Warden Schnurr's findings and conclusions, he discussed Grissom's handcuffing grievance, but there was no discussion of Grissom's daily shower issue. (Doc. 18-27 at 4). Grissom appealed the handcuffing grievance to the Secretary of Corrections, but he made no mention of the daily shower issue. (Doc. 18-27 at 3). Thus, while Grissom may have begun the grievance process as it pertained to his daily shower claim, he did not complete it. He did not appeal it to the Secretary of Corrections. "An inmate who begins the grievance process but does not complete it is barred from pursuing at § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). This Court should grant summary judgment in Defendants' favor on this issue.

### III.   Grissom's handcuffing and daily shower complaints fail to state a plausible First Amendment retaliation claim.

Grissom claims the decision by Defendants Schnurr, Vanhoose, Stiggins, Bell, and Ashford "to revoke his medically approved large double cuffs" and "to revoke his daily shower

approval" constituted "retaliatory conduct for Plaintiff's 1st Amendment [*sic*] to redress grievances to the Court." (Doc. 1 at 10). But Grissom has produced no evidence of retaliatory conduct.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (alteration and internal quotation marks omitted). In particular, officials may not retaliate against prisoners for filing administrative grievances. *See Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). To prove a defendant's liability for retaliation, a plaintiff must show: (1) he "was engaged in constitutionally protected activity"; (2) a state official named as a defendant caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the state official's "adverse action was substantially motivated as a response to [an inmate's] exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). To satisfy the third prong, Grissom is required to establish that "but for the retaliatory motive, the incidents to which he refers … would not have taken place." *Peterson*, 149 F.3d at 1144 (internal quotation marks omitted). Mere allegations of retaliatory motive are insufficient to defeat summary judgment. *Mollie v. Ward*, 106 F.3d 414, 1997 WL 22525, at *1 (10th Cir. 1997).

Courts "have consistently held that temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim." *Strope v. Cummings*, 381 Fed. Appx. 878, 883 (10th Cir. 2010). "[E]ven outside the prison context, temporal proximity per se is insufficient to show that the stated explanation for a challenged action is pretextual." *Id*. (citing *Pinkerton v. Colo. Dep't of Transp*., 563 F.3d 1052, 1066 (10th Cir. 2009)). "[G]eneric and unspecified allegations" noting the temporal proximity of the claimed

retaliation to the protected activity are "insufficient to satisfy the 'but for' requirement." *See Banks v. Katzenmeyer*, 645 Fed. Appx. 770, 772 (10th Cir. 2016).

Here, Grissom's First Amendment retaliation claim fails for several reasons. First, Grissom contends that, by itself, the "temporal proximity" between HCF's change in handcuffing and showering policies and Grissom's lawsuit against officials at EDCF (as well as the impending due date for the *Martinez* Report), shows retaliatory motive by Defendants Schnurr, Vanhoose, Stiggins, Bell, and Ashford. (Doc. 1 at 10). But this argument is defeated by the rule that "temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim." *Strope*, 381 Fed. Appx. at 883; *Pinkerton*, 563 F.3d at 1066.

Second, Grissom does not controvert the affidavits by Defendants Vanhoose and Stiggins stating that they do not remember anything about Grissom filing a lawsuit against officials at EDCF. The fact that Defendant Schnurr was served in the EDCF lawsuit does not mean he had a clearly memory of it nor that such knowledge shows retaliatory intent. (Doc. 18-2 at 1, Schnurr affidavit at ¶ 4). Moreover, Grissom's general assertion that "KDOC was notified" of his lawsuit does not mean Defendants Vanhoose and Stiggins were specifically notified. Thus, there is no genuine issue regarding Vanhoose's and Stiggins' ignorance of Grissom's lawsuit against officials at EDCF. *See* Fed. R. Civ. P. 56(a). Because these Defendants were unaware of Grissom's lawsuit, any of their decisions regarding his handcuffing or showering could not have been "substantially motivated as a response to [Grissom's] exercise of constitutionally protected conduct." *See Shero*, 510 F.3d at 1203.

In addition, the uncontroverted evidence shows that the actions taken toward him would have occurred without any alleged "retaliatory motive," because they were taken for the purpose

of avoiding potential security issues arising from his being handcuffed with leg restraints (Doc. 18-3 at 1, Vanhoose affidavit at ¶ 4), and to accommodate his physical needs while keeping handcuff equipment from being damaged unnecessarily. (Doc. 18-3 at 1-2, Vanhoose affidavit at ¶¶ 2-5, 8; Doc. 18-4 at 2, Stiggins affidavit at ¶¶ 2-7; Doc. 18-5 at 2, Bell affidavit at ¶¶4-7, 9; Doc. 18-6 at 1-3, Ashford affidavit at ¶¶ 4-5, 8, 14). *See Peterson*, 149 F.3d at 1144. Simply put, there is no triable issue regarding the fact that HCF staff considered Grissom's complaints and applied the best option they had to accommodate his physical needs in their handcuffing policy, and they would have done so regardless of any lawsuit he had against officials at EDCF.

Third, Defendant Schnurr did not become involved or issue any orders regarding the frequency of Grissom's showers. (Doc. 18-2 at 1, Schnurr affidavit at ¶ 2-3). So with respect to showers, Defendant Schnurr cannot have retaliated against Grissom.

Finally, Grissom's claim that Defendant Ashford knew of Grissom's lawsuit against officials at EDCF does not defeat summary judgment here because Grissom has produced no evidence of improper motive. *See Maschner*, 899 F.2d at 948, n. 4. Rather, according to Grissom, Ashford was simply following orders from Major Vanhoose. (Doc. 1 at 5). Grissom's contention that Defendant Ashford was lying is a mere allegation of retaliatory motive, which is also insufficient to defeat summary judgment. *See Mollie*, 1997 WL 22525 at *1.

At bottom, Grissom's claim amounts to the charge that Defendants Schnurr, Vanhoose, Stiggins, Bell, and Ashford changed the handcuffing and showering practices toward Grissom at the same time that Grissom had a pending lawsuit against EDCF based on similar handcuffing complaints, of which Defendants were aware. But all he has shown is the temporal proximity of these matters, from which he alleges a retaliatory motive. This is insufficient to defeat the Defendants' motion for summary judgment, and therefore, this Court should grant it.

**IV.     Grissom's handcuffing complaint fails to state a plausible Eighth Amendment claim?**

Grissom argues that Defendants Schnurr, Vanhoose, Stiggins, Bell, and Ashford violated the Eighth Amendment by ordering HCF officers to use regular-sized extra link handcuffs on him rather than large double handcuffs. (Doc. 1 at 10). Grissom further argues that the HCF officers who escorted him in the regular-sized handcuffs also violated his Eighth Amendment rights. (Doc. 1 at 10).

The Eighth Amendment protects inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. The primary concern of the drafters was to outlaw torture and other barbarous methods of punishment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Supreme Court has, therefore, concluded that this amendment imposes on the government a duty not to use excessive force against prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, a prison official violates the Eighth Amendment's prohibition against excessive force only if he causes "unnecessary and wanton infliction of pain[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

"Liability under § 1983 requires personal participation in the unlawful acts." *Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2005). Liability is not authorized under a theory of respondeat superior. *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018). Rather, Grissom must show an "affirmative link" between a defendant's actions and his alleged constitutional injury. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013). To establish the affirmative link, Grissom must show: (1) personal involvement; (2) sufficient causal connection; and (3) culpable state of mind. *Id.*

A prison official may not act with "deliberate indifference to inmate health or safety." (Internal quotations omitted). *Penrod v. Zavaras*, 94 F.3d 1399, 1405-06 (10th Cir. 1996). Liability for "deliberate indifference" requires the plaintiff to show that he is incarcerated under

conditions posing a substantial risk of serious harm. (Internal quotations omitted). *Verdecia v. Adams,* 327 F.3d 1171, 1175 (10th Cir. 2003). In addition, the prison official must be aware of facts from which an inference can be drawn that a substantial risk of serious harm exists, and to draw such an inference. *Id.* In other words, Grissom "must adduce facts to show the defendant knew of and disregarded 'an excessive risk to inmate health or safety.'" *Brooks v. Colorado Dept. of Corrections*, 12 F.4th 1160, 1173 (10th Cir. 2021).

Regarding his excessive force claim, Grissom must prove both an objective and a subjective element. *Marshall v. Milyard*, 415 Fed. Appx. 850, 852 (10th Cir. 2011). *First*, to establish the objective component, Grissom must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation[.]" *Id.* Not every allegedly malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson v. McMillian*, 503 U.S. 1, 10 (1992). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only those physical punishments rising above *de minimis* uses of force "are sufficiently grave to form the basis of an Eighth Amendment violation[,]" provided that the force used is not of a sort "repugnant to the conscience of mankind." *Id.* at 9-10. While the presence of an injury is not required, the presence or absence of an injury is a factor in the determination of whether a prison official's conduct constituted an objectively serious use of force. *See Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992).

*Second*, to establish the subjective component, Grissom must show that the Defendants "acted with a sufficiently culpable state of mind." *Marshall*, 415 Fed. Appx. at 852. To be cruel and unusual punishment, the conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319. Rather, Grissom must show that the Defendants took their actions "maliciously and sadistically for the very purpose of causing

harm" and not in a "good-faith effort to maintain or restore discipline[.]" *Id.* (emphasis added); *Hudson*, 503 U.S. at 7. "The infliction of pain in the course of a prisoner security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319.

K.A.R. 44-5-106(c) states that "[n]o restraining device shall be applied in a manner which would cause significant physical pain or undue discomfort, restrict blood circulation or breathing, or otherwise injure or incapacitate the inmate beyond the extent necessary to maintain security and control."

Here, Defendants Jackson (Thomas) and Morgan cannot be liable under Grissom's § 1983 claim because they were not personally involved in his injury. *See Schneider*, 717 F.3d at 767. In their affidavits, these two defendants insist they never restrained Grissom during March and April of 2020 because they were not working in segregation where Grissom was housed. (Doc. 1-1 at 9; Doc. 18-14 at 1; Doc. 18-16 at 1). Hence, they could not have handcuffed him. Grissom has provided no evidence that these defendants worked in segregation at the time, so this Court should dismiss them from Grissom's complaint. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based").

The undisputed material facts also show that prison officials did not act with deliberate indifference toward Grissom. Grissom has produced no evidence that the use of regular-sized extra link handcuffs to restrain him posed a substantial risk of serious harm. There is no documentation that in March and April of 2020 he went to medical staff for an alleged injury due to the handcuffs used on him. There is no evidence the handcuffs ever bruised his wrists or broke

his skin. Indeed, Grissom himself asserts only that the handcuffs produced "indentations." (Doc. 26 at 7). The officers who escorted Grissom in handcuffs generally testified that (1) they checked to make sure his cuffs were not too tight; (2) Grissom did not generally complain that the cuffs were too tight on his wrists; (3) he did occasionally complain that the extra link cuffs pulled on his shoulders; and (4) he was only in his cuffs for a very brief time. (Doc. 18-7 at 1-2; Doc. 18-8 at 1-2; Doc. 18-9 at 1; Doc. 18-10 at 1-2; Doc. 18-11 at 1; Doc. 18-12 at 1-2; Doc. 18-13 at 1-2; Doc. 18-17 at 1; Doc. 18-18 at 1; Doc. 18-21 at 2). There can be no genuine dispute that the actions taken by Defendants did not pose a substantial or excessive risk of serious harm to Grissom.

But even if this Court believes Grissom has shown that the handcuffs used on him posed such a risk, he must show that Defendants were aware of the risk and disregarded it. He has not done so. KDOC security staff in Restrictive Housing was informed that the new extra link restraints were adequate, and thus, double-cuffing could be eliminated. (Doc. 18-27 at 4). Grissom has produced no facts demonstrating that KDOC staff were on notice that the use of extra link handcuffs posed a substantial risk of serious harm to any inmate. Moreover, Defendants who directed and ordered the handcuff policy were aware that Grissom had large wrists, and they considered possible solutions. (Doc. 18-3 at 1-2, Vanhoose affidavit at ¶¶ 2-6; Doc. 18-4 at 1-2, Stiggins affidavit at ¶¶ 2-6). They quickly resolved the situation in April, 2020. (Doc. 18-27 at 4). In short, they were not indifferent to Grissom's need. Thus, Grissom has not satisfied the "subjective component" of the deliberate indifference standard, and his claim must fail as a matter of law. *See Verdecia*, 327 F.3d at 1175.

On his excessive force claim, Grissom has failed to satisfy the standard for liability. He cannot meet the objective component of the excessive force test because only that force which is

"objectively serious" can be deemed excessive. Yet here, no evidence shows Grissom suffered an injury from any of the handcuffing actions taken by the Defendants in March and April of 2020. Grissom's medical records show that he did not receive treatment between October, 2019 and April, 2020, for a shoulder injury related to handcuffing, nor was he evaluated for any sort of long-term chronic care related to the use of handcuffs on him. (Doc. 18-20 at 2, Lundry affidavit at ¶ 5; Doc. 18-26 at 3). There is no evidence the handcuffs cut into his skin. While Grissom filled out a Health Services Request Form asserting that on March 19, 2020, HCP Carmen had "prescribed Capsaicin Cream for the pulled shoulder from the cuffs[,]" there is no documentation as to why the cream may have been prescribed or that his allegedly pulled shoulder was anything more than a *de minimis* injury. (Doc. 18-26 at 3). *See Koch v. City of Del City*, 660 F.3d 1228, 1247 (10th Cir. 2011) (to succeed on a tight-handcuffing claim, "a plaintiff must show 'some actual injury that is not de minimis'"). Indeed, Grissom's medical records from March 19, 2020, show only that he complained of a Shingles rash. They say nothing about a visit for a pulled shoulder or a prescription for Capsaicin Cream. (Doc. 18-20 at 5).

Defendant Jackson (Keon) noted that Grissom "did complain about discomfort in his restraints[.]" (Doc. 18-21 at 2, Jackson affidavit at ¶ 6). But based on his medical records for 2019 and 2020, and even on his own description of his pain, there is no evidence that the force used on him rose above a *de minimis* level. No jury could reasonably believe that Grissom suffered significant physical pain or undue discomfort. *See* K.A.R. 44-5-106(c).

In similar cases, courts in this District and the Tenth Circuit have found against the plaintiff. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008) ("when an excessive force claim relies upon unduly tight handcuffing … the plaintiff must show 'some actual injury'" to state a claim); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (fleeting discomfort

or redness caused by tight handcuffing is *de minimis* as a matter of law); *Swanson v. Fields*, No. 93-3083, 1993 WL 537708, at *6 (10th Cir. 1993) (placing plaintiff in "tight handcuffs does not rise to the level of a constitutional violation"); *Jackson v. Simmons*, No. CIV. A. 99-3363-KHV, 2001 WL 1456859, at *6 (D. Kan. Nov. 2, 2001) (allegation that handcuffs made an indention or mark in plaintiff's wrists but did not cut the skin was *de minimus*); *Malik v. Mack*, 15 F. Supp. 2d 1047, 1050 (D. Kan. 1998) ("brief application" of hand and feet restraints which caused slight wrist injury insufficient to support Eighth Amendment claim).

The handcuffing used on Grissom was certainly not "repugnant to the conscience of mankind," as there was no "wanton infliction of pain." (Doc. 26 at 1-7); *see Ullery v. Bradley*, 949 F.3d 1282, 1290 (10th Cir. 2020); Black's Law Dictionary (11th ed. 2019) (defining "wanton" as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences").

Even if this Court finds that Grissom meets the objective component, his claim lacks plausibility because he cannot meet the subjective component. To do so, Grissom must show that the Defendants acted with a culpable state of mind, *i.e.*, "maliciously and sadistically for the very purpose of causing harm." *See Ashaheed v. Currington*, 7 F.4th 1236, 1247 (10th Cir. 2021). Here, Warden Schnurr stated that he did not issue any orders that would have affected Grissom's handcuffing during March and April of 2020, and thus, he cannot have violated Grissom's constitutional rights. (Doc. 18-2 at 1). But even if this Court accepts Grissom's claim that Warden Schnurr participated in the decision to stop using double cuffs on him, that decision was taken in consultation with Lt. Stiggins and UTM Bell, who did not act maliciously and sadistically for the very purpose of harming Grissom. (Doc. 1-1 at 28).

Lt. Stiggins knew that Grissom had large wrists so that larger handcuffs were preferable.

(Doc. 18-4 at 1, Stiggins affidavit at ¶¶ 2, 4). However, Lt. Stiggins also knew the larger cuffs did not come with extra links and that alternatives were being studied. (Doc. 18-4 at 1-2, Stiggins affidavit at ¶¶ 4, 6). Ultimately, after considering the alternatives, Lt. Stiggins and others concluded they would restrain Grissom by double cuffing him with larger handcuffs. (Doc. 18-4 at 2, Stiggins affidavit at ¶ 6; Doc. 18-26 at 4).

Similarly, UTM Bell also knew of Grissom's large wrists and understood that the use of regular-sized extra link handcuffs would be uncomfortable if used for an extended period of time. (Doc. 18-5 at 2, Bell affidavit at ¶¶ 5-6). But UTM Bell was following the policy of using extra link handcuffs until a different solution was implemented. (Doc. 18-5 at 2-3, Bell affidavit at ¶¶ 7-9). UTM Bell located larger handcuffs, but knew that those cuffs did not come with extra links. (Doc. 18-5 at 2, Bell affidavit at ¶ 7). Ultimately, UTM Bell verified that Grissom could be restrained by double cuffing him with larger cuffs. (Doc. 18-5 at 2-3, Bell affidavit at ¶¶ 7-8).

As with Defendants Stiggins and Bell, Major Vanhoose knew that regular sized handcuffs were not ideal for Grissom, but the use of leg restraints posed a security risk. (Doc. 18-3 at 1, Vanhoose affidavit at ¶¶ 3-4). Major Vanhoose noted that when the extra link cuffs proved unsatisfactory, Grissom was authorized to be restrained by double cuffing him with larger cuffs. (Doc. 18-3 at 2, Vanhoose affidavit at ¶ 6).

Likewise, Sergeant Ashford recognized the security risk of allowing Grissom to have his hands restrained with ankle shackles. (Doc. 18-6 at 1, Ashford affidavit at ¶ 3). Sergeant Ashford followed the directive of Major Vanhoose of using regular-sized extra link handcuffs because the larger cuffs did not come with extra links. (Doc. 18-6 at 2, Ashford affidavit at ¶¶ 5, 7). He followed the Major's orders until the decision was made to restrain Grissom by double cuffing him with larger cuffs. (Doc. 18-6 at 2, Ashford affidavit at ¶¶ 5, 9).

In response to these facts, Grissom merely asserts that these Defendants used regular-sized cuffs "knowingly, willfully and with malicious intent to cause unnecessary wanton pain[.]" (Doc. 1 at 10). But these allegations state only "a formulaic recitation of the elements of a cause of action[,]" which "will not do." *Iqbal*, 556 U.S. at 678. Moreover, Grissom's allegations are conclusory and self-serving, and thus, should be disregarded. *See Hall*, 935 F.2d at 1111 ("[C]onclusory and self-serving affidavits are not sufficient."). Therefore, it cannot be said that Defendants Schnurr, Vanhoose, Stiggins, Bell, or Ashford acted maliciously and sadistically in their handcuffing directives toward Grissom.

Neither has Grissom shown that the escorting officers acted maliciously and sadistically toward Grissom with the very purpose of causing him harm. Again, he merely offers a formulaic recitation of the elements of excessive force, claiming in conclusory fashion that "they knowingly, willingly, [and] intentionally exhibited deliberate indifference[,] fully aware their actions were wrong[.]" (Doc. 1 at 10). Indeed, Grissom himself asserts that all of the escorting officers—Defendants Michels, Eash, Loya, Andresen, Jackson (Thomas), Carter, Noble, Alcorn, Morgan, Jackson (Keon), Flowers, Kern, Reinert, Derringer, and Woodman—informed him that they were simply carrying out the approved policy of not double-cuffing and using regular-sized extra link cuffs. (Doc. 26 at 1-6).

There is no evidence, even on Grissom's telling of the facts, that any of the escorting officers knew this policy was wrong or that they were acting maliciously and sadistically to harm Grissom in applying this policy. Rather, the escorting officers' affidavits confirm the opposite, that when they handcuffed Grissom it was not for the purpose of causing him any discomfort. (Doc. 18-7 at 2; Doc. 18-8 at 2; Doc. 18-9 at 2; Doc. 18-10 at 2; Doc. 18-11 at 2; Doc. 18-12 at 2; Doc. 18-13 at 2; Doc. 18-15 at 1; Doc. 18-17 at 2; Doc. 18-18 at 2; Doc. 18-21 at 2; Doc. 18-28 at 1).

Thus, no reasonable jury could believe Grissom's assertions. *See Scott*, 550 U.S. at 380. All the Defendants are entitled to summary judgment on Grissom's claim of excessive force related to the use of regular-sized extra link handcuffs to restrain him.

**V.    Defendants are entitled to qualified immunity because their actions did not violate clearly established law of which reasonable state officials would have known.**

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016). In order to overcome Defendants' qualified immunity, Grissom must show not only that Defendants violated his federally secured rights (which he cannot, as demonstrated above), but also that an "objectively reasonable officer[ ] could not have thought the [conduct] constitutionally permissible[.]" *Cortez*, 478 F.3d at 1128. To make this showing, Grissom must demonstrate "that there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (citations omitted).

Defendants are entitled to qualified immunity because there is no clearly established law within this Circuit, or a robust consensus of cases outside of it, that Defendants' actions violated clearly established law, particularized to the facts of this case. Specifically, Grissom has not shown any law that put Defendants on notice that restraining him with regular-sized handcuffs with extra links for very brief periods constituted excessive force, even when the handcuffs created some discomfort. This is particularly true when Defendants were concerned with unnecessary damage to handcuffs due to double-cuffing, the larger handcuffs did not come with extra links, and Grissom suffered no actual injury from the handcuffs. *See Marshall v. Wiebe*, No. 16-3014-EFM-KGS,

2018 WL 1806760, at *6 (D. Kan. April 17, 2016) (finding no excessive force when plaintiff suffered no elbow or wrist injury, nor were any marks left, from Defendants' use of handcuffs); *Astorga v. Vick*, No. 15-3191-CM, 2017 WL 1397540, at *4 (D. Kan. April 17, 2017) (finding no excessive force because plaintiff suffered no discernable injury, did not timely complain of pain, and his allegations that defendants forced him into handcuffs and yanked his arms were *de minimus*).

While it was clearly established that prison officials cannot inflict injury where they act maliciously and sadistically for the very purpose of causing harm and not in a good faith effort to maintain discipline, the facts of this case fail to establish conduct that can be considered malicious and sadistic. Defendants Schnurr, Vanhoose, Stiggins, Bell, and Ashford understood that regular-sized cuffs were not ideal for Grissom. But they reasonably decided—for safety reasons—that he could not have his arms restrained with leg shackles, and that double-cuffing could not continue because it was destroying the handcuffs. They also had no larger handcuffs that came with extra links to help relieve pressure on Grissom's shoulders. Their decision to restrain him with regular-sized cuffs with extra links for very brief periods cannot be considered excessive force. Likewise, the escorting officers' application of this reasonable policy as they handcuffed Grissom cannot be considered excessive force.

Accordingly, no clearly established law would have put Defendants on notice that their actions were unlawful under these circumstances. Defendants are entitled to qualified immunity as a matter of law.

**VI.    Grissom is not entitled to punitive damages when he cannot show that any Defendant's conduct was motivated by evil intent or that any Defendant acted with reckless or callous indifference to his federal constitutional rights.**

In addition to the above, Grissom is not entitled to punitive damages against Defendants

for want of the requisite subjective intent. A § 1983 plaintiff claiming punitive damages must prove defendants' conduct either "is shown to be motivated by evil motive or intent" or "involves reckless or callous indifference to" his federal constitutional rights. *Searles v. Van Bebber,* 251 F.3d 869, 879 (10th Cir. 2001) (quoting *Smith v. Wade,* 461 U.S. 30, 56 (1983)). Barring pleading and proof that a defendant "either acted with malice or knew [his] actions were unconstitutional," a § 1983 plaintiff cannot pursue a claim for punitive damages. *See Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992). Grissom has adduced no evidence that any of defendants named here acted with the required maliciousness, evil motive, or with reckless indifference to Grissom's civil rights, or that they subjectively knew their actions were unconstitutional or contrary to clearly established law— foreclosing any viable claim for punitive damages under applicable law. *Searles*, 461 U.S. at 56; *Jolivet*, 966 F.2d at 577.

## CONCLUSION

Grissom's complaint should be dismissed because his claims are barred by the Eleventh Amendment and qualified immunity, he fails to exhaust his administrative remedies, and he fails to state a First or Eighth Amendment claim. In the alternative, Defendants request that this Court enter summary judgment on their behalf because the material facts, which are not subject to genuine dispute, entitle Defendants to judgment as a matter of law on all of Grissom's claims.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ Michael J. Duenes
Michael J. Duenes, KS No. 26431
Assistant Attorney General
Memorial Hall, 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Phone: (785) 296-2215
Fax: (785) 291-3767
Email: michael.duenes@ag.ks.gov
Attorney for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of January, 2022, the above and foregoing was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Natasha Carter
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, KS 66603
Natasha.Carter@ks.gov
Attorney for Kansas Department of Corrections, Interested Party

I also certify that a copy of the above was served via first-class mail, postage prepaid to:

Richard Grissom #33728
Lansing Correctional Facility
P.O. Box 2
Lansing, Kansas 66043-0002
Plaintiff, pro se

/s/ Michael J. Duenes
Michael J. Duenes
Assistant Attorney General

28