IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RICHARD GRISSOM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | Case. No. 20-CV-03163-SAC |
| ) | |
| **JORDAN BELL,** *et al*. ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants Jordan Bell, Daniel Schnurr, Clay Vanhoose, Raymond Stiggens, Shawn Ashford, Alan Carter, Harold Alcorn, Nicholas Woodman, Dusty Michels, Micah Eash, Christopher Loya, John Andresen, Thomas Jackson, Keon Jackson, Ariel Noble, Marc Morgan, Devin Flowers, Phillip Kern, Cody Reinert, and Cole Derringer ("Defendants"), by and through Assistant Attorney General, Michael J. Duenes, respectfully submit this Reply in further support of their Motion to Dismiss, or in the Alternative, for Summary Judgment. (Doc. 31). Defendants assert that Grissom's response fails to controvert the material facts set forth in Defendants' motion as required by D. Kan. 56.1 and does not overcome the legal arguments that Defendants advance in support of their motion. Accordingly, Defendants' motion should be granted in its entirety.

**I.      Grissom fails to properly controvert Defendants' Statement of Material Facts, so they are admitted.**

As required by D. Kan. Rule 56.1(f), Defendants served upon Grissom the Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion, along with the required texts of D. Kan. Rule 56.1 and Fed. R. Civ. P. 56. (Doc. 33). Yet Grissom fails to provide a response to the facts set forth in ¶¶ 1-6, 8-31 of Defendants' Statement of Material Facts as required by D. Kan. Rule 56.1(b)(1) or Fed. R. Civ. P. 56, and therefore, those paragraphs should be deemed admitted. D.

1

Kan. Rule 56.1(a); *see Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). In accordance with D. Kan. Rule 56.1(b)(1), Grissom has only responded to the facts set forth in ¶¶ 7 and 32 of Defendants' Statement of Material Facts. Therefore, Defendants reply to those responses ("DSOF") as follows:

**DSOF-7:** Grissom fails to controvert DSOF-7 as stated. Grissom does not provide any evidence that an "order from HCF administrative staff" directed that his hands be restrained with ankle shackles. He relies on the statement from Christopher Loya, a corporal at Hutchinson Correctional Facility ("HCF"), that "Unit Team Robert Hurt had prepared a leg iron list permitting Grissom to use them. I believe this was done by November 2019." (Doc. 18-12 at 1, ¶ 4). From this Grissom asserts that "there was a memo of some sort informing all cellhouse officers that [Grissom] is to be restrained using leg irons, or ankle shackles." (Doc. 39 at 2, ¶ 4).

A "list" permitting Grissom to use leg irons for a time is not an "order." Grissom does not refute the statement by HCF Master Sergeant, Shawn Ashford, that when he asked Grissom about his use of ankle restraints (it raised a "red flag" for Ashford), Grissom was able to produce only "a medical order for large handcuffs and extra links[,]" not ankle restraints. (Doc. 18-6 at 1, ¶ 3). Grissom also has not refuted the statement by HCF Master Sergeant, Harold Alcorn, that when Grissom "tried to say he used ankle irons as hand restraints," Alcorn "couldn't find any medical order and so I denied it." (Doc. 18-8 at 1, ¶ 2). Grissom provides no evidence of "a memo of some sort," so his reference to it is speculative and not based on personal knowledge. *See Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (responses to a motion for summary judgment cannot rely on ignorance of facts or on speculation).

In any case—as will be argued further below—even if this Court accepts Grissom's assertion on this point, it does nothing to support his lawsuit here.

**DSOF-32:** DSOF-32 is deemed admitted as Grissom's response is not based on any documentation or personal knowledge. *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (allegations not based on personal knowledge are not admissible under D. Kan. Rule 56.1(d) or Fed. R. Civ. P. 56(c)). The HCF staff roster on which Grissom says he looked up the name "Morgan" is not in the record to provide support for Grissom's claim. And even if there was a "Morgan" on the HCF staff roster, Grissom does not have personal knowledge that the alleged name on the roster correctly referred to Defendant Marc Morgan. In any case, even if this Court accepts Grissom's assertion on this point, Defendant Morgan's alleged handcuffing of Grissom would not have amounted to excessive force under the Eighth Amendment, nor would it have violated clearly established federal law.

Although Grissom does not specifically refute Paragraph 11 of Defendants' statement of material facts—which asserts that "the larger handcuffs do not come with extra links" (Doc. 32 at 4)—he does argue that large handcuffs do indeed come with extra links. Specifically, Grissom claims that based on his experience at El Dorado Correctional Facility ("EDCF"), he knows that there are "large extra length cuffs[.]" (Doc. 39 at 4, ¶ 13). But his alleged experience at EDCF does not qualify as personal knowledge of what is true at HCF. So his conclusory assertion cannot be accepted as fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("affidavits must be based on personal knowledge … conclusory and self-serving affidavits are not sufficient.").

## II.     Arguments and Authorities

Rather than reiterating every previous argument, Defendants incorporate herein, as if set forth in full, the arguments and authorities in Defendants' Memorandum in Support of Motion to Dismiss, or in the Alternative, for Summary Judgment. (Doc. 32). Defendants' Motion should be granted for the reasons previously stated.

### A. This Court should grant summary judgment to Defendants on the issues to which Grissom made no response.

Grissom has failed to address the following arguments in Defendants' Memorandum in Support of Motion to Dismiss, or in the Alternative, for Summary Judgment: (1) The Eleventh Amendment bars Grissom's ¶ 1983 claims against the state officials in their official capacities; (2) Grissom's handcuffing and daily shower complaints fail to state a plausible First Amendment retaliation claim; and (3) Grissom is not entitled to punitive damages. (Doc. 32 at 7-8). Accordingly, Defendants request that this Court grant dismissal or summary judgment in their favor as to these claims because Grissom has failed to defend against them in his Response. *See Hinsdale v. City of Liberal, Kan.*, 19 Fed. Appx. 749, 769 (10th Cir. 2001) (a plaintiff's failure in his summary judgment response to rebut or challenge arguments made by the moving party is fatal to plaintiff's claims); *Bermudez v. City of Topeka, Kansas*, No. 5:18-CV-4141-HLT-ADM, 2020 WL 206766, at *4 (D. Kan. Jan. 14, 2020) ("[Plaintiff's] failure to respond to the City's arguments about her gender-based claims suggests she has abandoned those claims and is grounds for summary judgment.").

### B. Grissom failed to exhaust his administrative remedies on his daily shower complaint before filing his lawsuit in this Court.

Grissom argues—contrary to Defendants' claim—that he did, in fact, file a grievance regarding the discontinuance of his daily showers. (Doc. 32 at 3; Doc. 39 at 1-2, ¶ 3). Grissom attaches Exhibit A to his Response, showing his completion of the grievance process pertaining to daily hot showers. (Doc. 39-1 at 1-8). Notwithstanding Grissom's failure to mention this grievance in his complaint, he still did not exhaust his administrative remedies because he did not timely grieve his shower issue.

Grissom filed his complaint on June 15, 2020. (Doc. 1 at 1). But according to his Exhibit A, he did not complete the Kansas Department of Corrections ("KDOC") grievance process

4

pertaining to his shower issue until at least July 17, 2020—the day he filed an appeal with the Kansas Secretary of Corrections. (Doc. 39-1 at 2).

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available administrative remedies *before* filing a complaint in federal court. 42 U.S.C. § 1997e(a); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted). Here, Grissom exhausted his administrative remedies regarding the showers after he filed his complaint, contrary to the requirements of the PLRA. Hence, Grissom's claim should be dismissed.

### C. Defendants are entitled to qualified immunity.

Defendants raised the defense of qualified immunity in their motion, shifting to Grissom the heavy two-part burden of showing that each individual Officer (1) violated the Eighth Amendment and (2) acted unreasonably in light of clearly established law. *See Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Grissom fails to satisfy his burden.

Grissom reiterates his claim that Defendants were guilty of "deliberate indifference" in their policy of restraining him. (Doc. 39 at 3). He bases this on the continuing validity of the medical order instructing prison officials to use "large" restraints on him, as well as the ostensible "common sense" observation that he was being injured by the way in which Officers were handcuffing him. (Doc. 39 at 2-3). However, to establish deliberate indifference, Grissom "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official was "aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (Internal quotations omitted). *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). In other words, Grissom "must adduce

facts to show the defendant knew of and disregarded 'an excessive risk to inmate health and safety.'" *Brooks v. Colorado Dept. of Corrections*, 12 F.4th 1160, 1173 (10th Cir. 2021).

Grissom does not challenge the fact that HCF staff stopped using ankle shackles to handcuff him both for security reasons and because no HCF policy authorized it. (Doc. 32 at 4, ¶ 8). Thus, HCF staff did not engage in some nefarious plot to "target" him—as he insinuates—when it ordered that ankle shackles no longer be used for handcuffing. (Doc. 39 at 4). Grissom was not harmed in any way by HCF staff's refusal to continue handcuffing him with ankle shackles.

Moreover, the fact that HCF staff ultimately resolved Grissom's handcuffing issue by double-cuffing him with large handcuffs does not mean staff was "no longer concerned that double cuffing damages the cuffs," as he claims. (Doc. 32 at 5, ¶ 13; Doc. 39 at 4, ¶ 13). Grissom does not argue that based on his handcuffing issues, HCF reverted to a general policy of double-cuffing inmates. Obviously, HCF staff simply acquiesced to double-cuffing in his extraordinary case.

At bottom, Grissom cannot establish deliberate indifference because he cannot show that he ever faced a "*substantial* risk of *serious* harm," nor that prison officials reasonably could have drawn an inference that such a risk existed and then actually drawn the inference. Based on the uncontroverted facts, Grissom has shown, at most, that he faced a risk of minimal harm and that he may have actually suffered the *de minimis* harm of minor pain or discomfort.

Grissom has produced no documentation that in March and April of 2020 he went to medical staff for an alleged injury due to the handcuffs used on him. There is no evidence the handcuffs ever bruised his wrists or broke his skin. And while he complained of "indentations, he was only cuffed for minutes at a time. (Doc. 26 at 7; Doc. 32 at 19-20). All of which refutes Grissom's conclusory contention in his Response that "it was obvious that the blood circulation in

6

[his] wrists were [*sic*] being restricted[.]" (Doc. 39 at 3, ¶ 8).

Grissom argues that "[t]he escorting officers, especially the ones who had used leg iron restraints, clearly was [*sic*] aware that using regular size cuffs would cause unnecessary pain due to the difficulty in applying the new restraints." (Doc. 39 at 2, ¶ 7). At least two of the escorting officers stated they were aware of some discomfort on Grissom's part due to the handcuffing. (Doc. 18-12 at 1, ¶¶ 2-3; Doc. 18-13 at 1, ¶¶ 2, 4). Yet "unnecessary pain" or some pain and discomfort is a far cry from a substantial risk of serious harm.

Moreover, it is uncontroverted that HCF staff who were making policy decisions about handcuffing Grissom were not indifferent to his plight, but worked to find a satisfactory resolution. (Doc. 32 at 20). Grissom asserts that because Officers Stiggins and Bell did not want to discuss handcuffing policy with him, they must not have considered possible solutions. (Doc. 1 at 5, ¶ 4; Doc. 39 at 3, ¶ 10). This does not follow. Grissom has not shown that HCF staff is required to bring him, or any inmate, into its internal prison policy considerations. Both in his complaint and his Response, Grissom has produced no facts demonstrating that HCF staff were on notice that the use of regular-sized extra link handcuffs posed a substantial risk of serious harm. He has also failed to show that the regular handcuffs, in which he was restrained for very brief periods of time, caused "significant physical pain or undue discomfort" or "restrict[ed] blood circulation … or otherwise injure[d] or incapacitate[d] [him] beyond the extent necessary to maintain security and control." *See* K.A.R. § 44-5-106(c). There was no deliberate indifference, so Defendants are entitled to summary judgment.

### D. Grissom has not shown that Defendants violated a clearly established law of which reasonable state officials would have known.

Grissom argues that prison officials violated a clearly established right that was sufficiently clear that every reasonable official would have understood that what he is doing violates that right.

7

(Doc. 39 at 2). But he has not demonstrated "that there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [finds] the law to be as [he] maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (citations omitted).

Grissom quotes K.A.R. § 44-5-106(c). However, as explained above, Defendants' conduct did not violate that regulation. And Grissom relies on inapt federal cases in support of his claims.

Grissom first relies on *Howard v. Adkison*, 887 F.2d 134, 140 (8th Cir. 1989), for the proposition that "defendants who acted in violation of prison policies were not immune." (Doc. 39 at 2, ¶ 6). But the right established in *Howard* is not the same as the right alleged by Grissom here, and the United State Supreme Court has emphasized that "the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019).

In *Howard*, the inmate was subjected to two years of disgusting prison cell conditions, including "a cell covered with filth and human waste," denial of "access to proper cleaning supplies," a mattress that "was torn, dirty, stained with urine, and covered with human waste[,]" "deni[al] [of] laundry service during his first five months in the unit," "laundry [that] was returned wet and still dirty[,]" and provision of "only a dirty blanket and half a sheet[.]" 887 F.2d at 137. The Court noted the jury's finding that "Howard had been forced to live under extreme conditions for a period of two years[,]" and thus, "[i]t should have been apparent to a reasonable person that the conduct in question was impermissible." *Id*. at 140.

*Howard* does not provide a clearly established law that put Defendants here on notice that restraining Grissom with regular-sized handcuffs with extra links for very brief periods, with no resulting injuries, constituted excessive force—even when the handcuffs created some discomfort. Defendants were making a good faith effort to find an alternative to double-cuffing, and the large sized handcuffs did not come with extra links. Hence, they are entitled to qualified immunity.

8

Grissom also relies on *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001), in claiming that "a right can be clearly established on the basis of 'common sense[,]'" and it should have been common sense that using regular-sized cuffs on him "would cause unnecessary pain[.]" (Doc. 39 at 2, ¶ 7). But again, the right at issue in *Giebel* is not the one alleged by Grissom here. In *Giebel*, the Court held that common sense and analogous case law clearly established that "handbills were a form of speech protected by the First Amendment[,]" so the "removal of [plaintiff's] handbills from a designated public forum was contrary to the First Amendment." 244 F.3d at 1189-90. It is not likewise common sense that in a prison context, an inmate has a clearly established right to be free of *de minimis* pain or discomfort during a few minutes of handcuffing. Indeed, the opposite is true. *See, e.g., Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (fleeting discomfort or redness caused by tight handcuffing is *de minimis* as a matter of law).

The other cases on which Grissom relies also show no clearly established right to be free of brief tight handcuffing that produces no injury. (Doc. 39 at 2-3, ¶¶ 7-8). *See Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020) ("obvious cruelty" when inmates are put in "wantonly 'degrading and dangerous' situations" such as "deplorably unsanitary conditions for … an extended period of time"); *Johnson v. City of Ecorse*, 137 F. Supp. 2d 886, 893 (E.D. Mich. 2001) ("clearly established right to be free of excessively-tight handcuffs" only "where arrestee suffers from a physical ailment that makes handcuffing especially painful, and advises the officers of this condition before tight handcuffs cause the arrestee injury"); *Aswegan v. Bruhl*, 965 F.2d 676, 677 (8th Cir. 1992) (finding sufficient evidence for jury finding of deliberate indifference where prison officials denied inmate access to medical personnel, refused to deliver to inmate prescribed antibiotics, and failed to eliminate repeated violations of orders to get inmate his medications in timely manner, to not cuff inmate with hands behind back, and to not place inmate in shower stalls during cell shake-downs).

9

**III.    Conclusion**

This Court should grant summary judgment to Defendants on the issues to which Grissom made no response. Grissom has failed to carry his heavy two-part burden to show a genuine dispute of material fact about Defendants' entitlement to qualified immunity, and he does not show that any of the individual Officers violated clearly established law. Grissom did not exhaust his administrative remedies on his daily shower claim, so it too must be dismissed. In the alternative, Defendants request that this Court enter summary judgment on their behalf.

    Respectfully submitted,

    OFFICE OF ATTORNEY GENERAL
    DEREK SCHMIDT

    /s/ *Michael J. Duenes*
    Michael J. Duenes, KS No. 26431
    Assistant Attorney General
    120 SW 10th Avenue, 2nd Floor
    Topeka, Kansas 66612-1597
    Ph: (785) 296-2215
    Fax: (785) 291-3767
    Email: michael.duenes@ag.ks.gov
    *Attorney for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 21st day of March, 2022, the above and foregoing was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Natasha Carter
Kansas Department of Corrections
714 SW Jackson, 2nd Floor
Topeka, KS 66603
Natasha.Carter@ks.gov

Jon Graves
Kansas Department of Corrections
Hutchinson Correctional Facility
500 S. Reformatory Rd., 1568
Hutchinson, KS 67504
Jon.Graves@ks.gov

I also certify that a copy of the above was served via first-class mail, postage prepaid to:

Richard Grissom #33728
Lansing Correctional Facility
P.O. Box 2
Lansing, KS 66043-0002
*Plaintiff, pro se*

                                          /s/ *Michael J. Duenes*
                                          Michael J. Duenes
                                          Assistant Attorney General