IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD GRISSOM,

Plaintiff,

v.                                                                    Case No.  20-3163-JWB

JORDAN BELL, et al.,

Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' motion to dismiss or, in the alternative, for summary judgment.  (Doc. 31.)  The motion has been fully briefed and is ripe for decision.  (Docs. 32, 39, 40.)  The motion is GRANTED for the reasons stated herein.

### I.      Facts

The following facts are either uncontroverted or viewed in a light most favorable to Plaintiff.  Plaintiff Richard Grissom is a prisoner in the custody of the Kansas Department of Corrections ("KDOC") and was housed in the restrictive housing unit (segregation) at the Hutchinson Correctional Facility ("HCF") during March and April 2020.  Since 2018, Plaintiff has had a medical order for double-cuffing and larger handcuff size.  (Doc. 18-27 at 16.)  Plaintiff's medical records states that he was "given a medical double cuff due to his size."  (Doc. 18-20 at 3.)  There is no evidence in the record that Plaintiff's medical order for double-cuffing and large cuff size was issued for a medical reason other than Plaintiff's size.  (*See id.*; Doc. 18-27 at 16.)  Double-cuffing is when two pairs of handcuffs are used to restrain an inmate, putting one cuff of a pair on each wrist, and then closing the other two cuffs with each other.  (Doc. 18 at 7.)  Prior to March 2020, HCF staff used ankle shackles with a long chain to restrain Plaintiff's hands instead

1

of larger handcuffs that were double-cuffed but this action was not taken pursuant to medical order.[1]   (Docs. 18-3 ¶ 3-4; 18-6 at ¶ 3; 18-8 ¶ 3.)   Defendant Dennis VanHoose, the Chief of Security at HCF, ordered that staff stop using ankle restraints on Plaintiff because of security concerns.   Specifically, an inmate could be able to get the long chain from the ankle restraints in front of him which could result in the inmate being able to use his hands aggressively and the chain as a weapon.   (Doc. 18-3 at ¶ 4.)   VanHoose understood that some inmates had difficulty putting their hands behind their backs comfortably while being restrained with regular-seized handcuffs.   As a result, they had allowed those inmates to be double-cuffed.   But the handcuffs were being damaged because "the mechanism and structure of the middle two cuffs were being twisted enough that one handcuff on a pair would not properly lock and the handcuffs had to be discarded."   (Doc. 32-3 at 8.)

Because of the damage to the handcuffs, it was determined that double-cuffing was not feasible at HCF.   After considering the options and the discomfort of regular cuffs for some inmates, VanHoose determined that regular-sized handcuffs would be used with two extra cuff links.   (Doc. 18-3 ¶¶ 2, 5, 8.)   The extra cuff links "provided enough length to permit all inmates with the medical authorization to be restrained."   (Doc. 32-3 at 5) (Affidavit of Stiggins); *see also id.* at 8 (Affidavit of Bell), 11 (Affidavit of Ashford), 37 (Affidavit of Debra Lundry, the Health Services Administrator).   HCF was unable to use larger handcuffs with extra links because the larger handcuffs did not come with extra links.[2]   (Doc. 18-4 ¶ 4.)   Defendants VanHoose, Raymond

---

[1] An affidavit by Defendant Christopher Loya states that he believed that "Unit Team Robert Hurt had prepared a leg iron list permitting Grissom to use them" in November 2019.  (Doc. 18-12 ¶ 4.)  There is no evidence of this approval in the record.

[2] Plaintiff attempts to controvert this fact by stating that he had previously been restrained at El Dorado Correctional Facility (EDCF) and that all the "cell houses had their own sets" of large handcuffs with extra links.  (Doc. 39 at 4.) This does not controvert the fact that the large handcuffs at HCF in March and April 2020 did not come with extra links.  Plaintiff offers no timeframe that these large handcuffs with extra links were available at EDCF nor a foundation to support his assertion that they had these handcuffs at other cell houses.

Stiggins, the Restrictive Housing Unit Lieutenant at HCF, and Jordan Bell, the Classification Administrator at HCF, were aware that Plaintiff had large wrists and big shoulders which made the larger handcuffs preferable.  In early March 2020, HCF staff were instructed by Major VanHoose to use regular handcuffs with extra links.  This practice was substituted instead of allowing double cuffing or ankle chains. (Doc. 18-6 ¶ 5.)  "The change in handcuffing procedure was primarily done to address the issue of having to replace expensive equipment before it should have been worn out and secondarily to address potential security issues." (Doc. 18-3 ¶ 8.)

On March 5, 2020, Plaintiff filed a grievance stating that he had been informed that Defendants Schnurr, Stiggins, and Bell ordered Plaintiff to be cuffed in regular cuffs even though he had been "medically approved" for large double cuffs. (Doc. 18-27 at 17.)  In response, Plaintiff was informed that "This is correct.  You are on the list as extra link cuffs." (*Id.*)  On March 17, Plaintiff filed an emergency grievance on the basis that HCF staff were not following his medical order by restraining him in regular cuffs. (Doc. 18-27 at 5.)  Plaintiff requested that the Secretary of Corrections "should instruct and mandate that HCF staff return[] to use the leg irons or use (2) sets of large cuffs to restrain Plaintiff until they purchase large extra length cuffs that equals the length or close proximity to large double cuffing, and it should be considered an emergency." (*Id.* at 8.)  Plaintiff's emergency grievance was denied because it was not considered an emergency and it was forwarded to the warden for review and response. (*Id.* at 9.)

Between March 6 and April 12, 2020, Plaintiff was placed in regular restraints with extra links on 34 occasions (17 different dates) so that he could be moved from his cell to the shower or sick call and then back to his cell. (Docs. 1 at 5-8, 1-1 at 9.)  According to Plaintiff, he was placed in regular restraints with extra links by Defendants Alan Carter (3/15/20 and 3/22/20), Harold Alcorn (3/20/20), Nicholas Woodman (4/10/20), Dusty Michels (3/6/20), Micah Eash (3/8/20),

Christopher Loya (3/8/20), John Andresen (3/10/20 and 3/24/20), Thomas Jackson (3/13/20), Keon Jackson (3/27/20, 3/29/20 and 4/12/20), Ariel Nobel (3/16/20), Marc Morgan (3/27/20), Devin Flowers (3/31/20), Phillip Kern (4/3/20), Cody Reinert (4/5/20) and Cole Derringer (4/7/20).   Although Plaintiff has alleged that Thomas Jackson and Marc Morgan restrained Plaintiff in regular sized handcuffs during this time period, Jackson and Morgan did not work in segregation in March and April 2020.[3]  (Docs. 18-14; 18-16.)

Plaintiff contends that he told each individual Defendant who restrained him that he had a medical order for large or double cuffs and that the regular cuffs caused him pain.  Plaintiff further states that the regular handcuffs caused indentations on his wrists.  (Doc. 39 at 3.)  Plaintiff's medical records, however, do not show that Plaintiff received treatment for any injury as a result of the use of regular handcuffs with extra links.  There is evidence that Plaintiff was prescribed Capsaicin cream on March 19, 2020, but there is no record showing why the cream was prescribed. Plaintiff claims that it was prescribed due to the use of the regular handcuffs.  (Doc. 1-1 at 7.)  In support of this assertion, Plaintiff has attached a March 25, 2020, health services request form in which he asked that the cream prescribed for his "pulled shoulder from the cuffs" be provided to him.  (*Id.*)  Plaintiff's complaint alleges that this cream was prescribed to treat his sore shoulder "from being handcuffed on 3/16/20." (Doc. 1 at 6.)  There is no further evidence of any injury in the record from the use of regular handcuffs with extra links.  Plaintiff also makes no further claim of any other physical injury beyond general pain and discomfort at the time he was in the handcuffs.

---

[3] Plaintiff attempts to controvert this fact regarding Defendant Morgan by stating that he asked the officer for his name on March 27, 2020, and the officer stated that his name was "Morgan."  (Doc. 39 at 2.)  The fact that someone told Plaintiff that his name was "Morgan" does not controvert the fact that **Marc Morgan** did not work in segregation during March and April 2020.  Notably, Marc Morgan testified that he has never worked in segregation.  (Doc. 18-16.)  In any event, even if Plaintiff's statement created a genuine issue of material fact as to whether Marc Morgan in fact used regular handcuffs to restrain Plaintiff on March 27, 2020, Morgan would be entitled to summary judgment on qualified immunity grounds as discussed herein.

On April 15, 2020, Defendant Warden Schnurr ultimately approved the use of double cuffing with large handcuffs as to Plaintiff. (Doc. 18-5 ¶ 8.) Bell informed Plaintiff of the decision. On April 20, Schnurr addressed Plaintiff's grievance and stated that the issue had been resolved. Schnurr stated that the "directive to security staff was to eliminate all double cuffing in Restrictive Housing, as it was not necessary due to the new restraints...[which] had extra links to eliminate double cuffing.  Due to your double cuffing order, the officers followed this directive." (Doc. 18-26 at 4.)  After they looked into Plaintiff's concern regarding the size of the cuffs and because the larger handcuffs did not come with extra links, they informed staff to use the large double handcuffs to restrain Plaintiff. (*Id.*)  Plaintiff appealed the grievance and the Secretary of Corrections affirmed Schnurr's decision. (Doc. 18-27 at 1.)  As a result of the use of regular handcuffs during March and April 2020, Plaintiff submitted a property claim in which he sought $44,000 in damages for compensation. (Doc. 18-26 at 1.)  Plaintiff's request for monetary compensation was denied.

 Complaint regarding showers.  Plaintiff suffers from lupus, an auto-immune disease which results in the eruption of painful skin lesions and rashes at times. (Doc. 1 at 6.)  Plaintiff states that hot showers help his rashes and seeks an order allowing him to take daily showers.  Beginning in October 2019, Plaintiff was granted daily showers by HCF staff (excluding Wednesdays) on a temporary basis. (Docs. 1-1 at 29; 18-5 at 1.)  Although Plaintiff asserted that there was a medical order allowing daily showers, the record shows that there has never been such an order at HCF. Defendant Shawn Ashford, a Master Sergeant at HCF, spoke with Dr. Kingsley and Nurse Faye Vargas regarding Plaintiff's showers.  Both informed him that there was no medical order for daily showers. (Doc. 18-6 at 2-3.)  This practice was stopped in early March 2020 because it was not based on a medical order and, as a result, could cause other inmates to demand daily showers and

there is not sufficient staff to escort the segregation inmates to the shower on a daily basis.  (Docs. 18-5 at 1; 18-6 at 2-3.)

Previous lawsuit.   On September 12, 2019, Plaintiff filed a § 1983 action ("EDCF complaint") against various Defendants regarding his alleged unconstitutional treatment while housed at the El Dorado Correctional Facility ("EDCF").  *See Grissom v. Palm, et al*., Case No. 19-3178-EFM (D. Kan. 2019).  The defendants in that action included Defendant Schnurr who was the EDCF warden at the time the action arose.  (Case No. 19-3178, Doc. 1 at 2.)  Defendant Schnurr along with the other individual defendants were served on January 16, 2020.  (*Id.* at Doc. 9.)

Several Defendants testified that they either did not know about the lawsuit or had no recollection about the fact that Plaintiff filed a lawsuit against officials at EDCF.  (Doc. 32 at 6-7) (citing to affidavits in the record).  Plaintiff asserts that Defendant Ashford had knowledge about the suit because Plaintiff told Ashford he had a suit pending over the handcuff issue and Ashford responded "I know but orders are orders."  (Doc. 1-1 at 5.)  Plaintiff further asserts that Defendant Schnurr had knowledge because he was named as a defendant in that suit.

Retaliation grievance.   On June 11, 2020, Plaintiff submitted a grievance regarding the daily showers.  Plaintiff asserted that he needed the daily showers for relief from his lupus symptoms.  Plaintiff claimed that he had a "recommendation by medical staff" for daily showers even though there is not an order for daily showers.  (Doc. 39-1 at 4-5.)  Plaintiff stated that he believed that VanHoose and Bell revoked the daily showers in order to punish and retaliate against him.  (*Id.* at 6.)  On June 15, Debra Lundry, RN, responded to the grievance and stated that the shower request was never ordered and that it "is of no benefit to you to allow extra showers or shower time for your condition."  (*Id.* at 7.)  Plaintiff appealed the decision to Schnurr who stated

6

that he agreed with Lundry's response.  Plaintiff appealed to the Secretary of Corrections on July 17, 2020.  (*Id.* at 2.)  On August 12, 2020, Doug Burris responded to the grievance and recommended that the healthcare team schedule a dermatology consult and then consider a balance between medical treatment and the utilization of lukewarm showers for immediate relief.  (*Id.* at 1.)

This action.  Plaintiff filed this action on June 15, 2020.  Plaintiff alleged three claims under 42 U.S.C. § 1983: Count 1 alleges a violation of the Eighth Amendment against Schnurr, VanHoose, Stiggins, Bell, and Ashford (the supervisory Defendants) for ordering prison staff to use regular handcuffs to restrain Plaintiff; Count 2 alleges a violation of the Eighth Amendment against Carter, Alcorn, Woodman, Michels, Eash, Loya, Andresen, Thomas Jackson, Keon Jackson, Nobel, Morgan, Flowers, Kern, Reinert and Derringer (the "escorting Defendants") on the basis that the use of the regular handcuffs amounted to excessive force and they acted with deliberate indifference; and Count 3 alleges that the supervisory officials retaliated against him in violation of his First Amendment rights by revoking his daily showers and his medical order for large handcuffs as a result of his lawsuit against the EDCF officials.  (Doc. 1 at 10.)  All claims are alleged against Defendants in their individual and official capacities.

Defendants now move for dismissal or, in the alternative, summary judgment.  Because the court has considered the *Martinez* report and other exhibits in ruling on this motion, the court will evaluate the claims under the standard for summary judgment.

II.     **Standard**

7

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.  *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006).  The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies.  D. Kan. R. 56.1(a).  "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id.*  To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1).  Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted.  *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in Blue Cross's summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).

In his response, Plaintiff failed to respond to the majority of Defendants' statement of facts. In accordance with this court's local rule regarding motions for summary judgment, D. Kan. Rule 56.1, Defendants provided Plaintiff with the notice regarding the rules applicable to motions for summary judgment.  (Doc. 33.)  This notice informed Plaintiff that Defendants' facts would be admitted if he failed to properly controvert those facts.  As a result, all facts that have not been properly controverted by Plaintiff are admitted.

## III.   Analysis

### A.   Official Capacity Claims

All Defendants move for summary judgment on the claims stated against them in their official capacity on the basis that those claims are barred by the Eleventh Amendment.

"It is well settled that the Eleventh Amendment, in the absence of consent, bars suit against the state or one of its agencies or departments in federal court." *Barger v. State of Kan.*, 620 F. Supp. 1432, 1434 (D. Kan. 1985). This immunity extends to state officials acting in their official capacities because "a suit against a state official in his or her official capacity . . . is no different than a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Here, this court has "no trouble concluding that KDOC is an agency or department of the State of Kansas." *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012); *Eastwood v. Dep't of Corr. of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988) (concluding that the Oklahoma Department of Corrections "is an arm of the state and should be entitled to" Eleventh Amendment immunity); *see also Vinson v. McKune*, 265 Kan. 422, 960 P.2d 222, 226 (1998) (noting the court readily "observed that the [KDOC] is a state agency" as defined by Kansas law). Plaintiff offers no meaningful rebuttal to the fact that all Defendants are employees of KDOC, a Kansas agency, acting in their official capacity at the time of the alleged events. Plaintiff has not identified any facts or basis for finding a waiver of sovereign immunity by the State of Kansas, its agencies, or the relevant officials. Accordingly, Plaintiff's claims against all Defendants, in their official capacity, are dismissed for lack of jurisdiction.

### B.   Individual Capacity Claims

With respect to the claims against them in their individual capacities, Defendants argue that they are entitled to qualified immunity.

### 1.    Qualified Immunity

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials … from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted).  "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. To qualify as clearly established, a constitutional right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  A case clearly establishes a right "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as [the] plaintiff maintains."  *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1197-98 (10th Cir. 2010).  As explained by the Supreme Court, a case directly on point is not required "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12.  As a result, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  *Id.*  Clearly established law cannot be defined at a "high level of generality."  *Id.*  The "dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis in original).

### 2.    Eighth Amendment

The Eighth Amendment protects inmates from "cruel and unusual punishments." U.S. Const. amend. VIII.  "After incarceration," the Eight Amendment prohibits "the unnecessary and wanton infliction of pain" on prisoners.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The Eighth Amendment further protects against deliberate indifference to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Plaintiff has alleged that Defendants violated his Eighth Amendment rights by restraining him in regular handcuffs with extra links when he had a medical order for large and double cuffs and the regular handcuffs were too small.[4]  With respect to the supervisors, Plaintiff has alleged that they violated his Eighth Amendment rights by implementing a policy regarding the use of regular handcuffs with extra links knowing that he had a medical order for large and double cuffs.  (Doc. 1 at 10.)  Therefore, the proper test is based on deliberate indifference to medical needs.  *See Wells v. State of Okl. ex rel. Dep't of Pub. Safety*, 97 F.3d 1465, 1996 WL 557722, *2 (10th Cir. 1996) (discussing that an allegation of use of excessive force in handcuffing could be based on a claim of deliberate indifference to medical needs when there is a claim that the plaintiff had an injury or medical restriction) (citing *Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994).[5]

Plaintiff's claim with respect to Defendants' failure to comply with his prescribed medical treatment in the use of restraints requires both an objective and subjective component.  *See Strain v. Regalado,* 977 F.3d 984, 989 (10th Cir. 2020).  Deliberate indifference to a serious medical need requires proof that, objectively, Plaintiff was suffering from a serious medical need and that,

---

[4] Notably, although Plaintiff challenges the *type* of handcuffs used by Defendants when moving Plaintiff out of his cell while he was in segregation, Plaintiff does not challenge the necessity of using handcuffs during transport to showers or medical appointments.  Because Plaintiff was housed in segregation at the time of these events, KDOC policy provided for the use of handcuffs to transport prisoners housed in segregation (RHU).  (Doc. 19-2 at 2.)
[5] Even if Plaintiff's Eighth Amendment violation could be construed as both a claim of excessive force and a claim of deliberate indifference to his medical need for failing to comply with prescribed treatment, Defendants would be entitled to qualified immunity on Plaintiff's Eighth Amendment excessive force claim as discussed *infra* because he cannot establish that this right is clearly established.

subjectively, the prison staff were aware of the need for medical care but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).  "To satisfy the subjective component, the plaintiff must show the official 'knows of and disregards an excessive risk to inmate health or safety.'"  *Sawyers v. Norton,* 962 F.3d 1270, 1283 (10th Cir. 2020) (citation omitted).

With respect to the supervisory officials, they are not vicariously liable for their employees' acts.  *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Comm's*, 32 F.4th 1246, 1255 (10th Cir. 2022).  A supervisor may be liable when he creates, promulgates, or implements a policy that injures a plaintiff's constitutional rights.  *Id.*  To attach liability to a supervisor, Plaintiff must "show an 'affirmative link' between the supervisor and the constitutional violation."  *Id.* (quoting *Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)). To show the "affirmative link" between a supervisor and the alleged constitutional injury, Plaintiff must prove: "(1) the defendant promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Id.* (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199–200 (10th Cir. 2010)).

### 3.    Handcuffing

The court first turns to the allegations against the escorting Defendants who restrained Plaintiff with regular handcuffs and extra links while escorting him to the shower or medical calls. Initially, Defendants Thomas Jackson and Marc Morgan move for summary judgment on the basis that they were not working in segregation in March and April 2020 and, therefore, could not have

restrained Plaintiff on the dates alleged in the complaint.  Plaintiff has not submitted sufficient evidence to controvert these facts.  Therefore, because Thomas Jackson and Marc Morgan did not restrain Plaintiff they are entitled to summary judgment on Plaintiff's Eighth Amendment claims against them.

The court now turns to the claims against the remaining escorting Defendants.  These Defendants do not dispute that they worked in segregation during the time period at issue. Defendants argue that Plaintiff fails to establish his § 1983 claim because he cannot show that there was an Eighth Amendment violation, that Defendants acted with the requisite intent, and that the law was clearly established.

None of the parties spend a significant amount of time discussing the particulars of each application of regular handcuffs.  Defendants' affidavits detail their practices in applying handcuffs to inmates and the majority of Defendants do not recall restraining Plaintiff on the dates at issue or hearing Plaintiff complain about the handcuffs.  (*See* Docs. 18-7 through 18-13, 18-17, 18-18, 18-21.)  Defendants also state that they used the handcuffs that they were ordered to use and that they did not intend to cause Plaintiff any discomfort.  (*See generally id.*)  With respect to the Defendants that do recall restraining Plaintiff, Alcorn stated that Plaintiff complained to him about the links not being long enough but not about the handcuffs being tight and Alcorn was able to get his finger under the handcuffs after they were applied to Plaintiff (Doc. 18-8 ¶ 5); Loya stated that Plaintiff commented about it being hard to put his hand behind his back but made no complaints regarding an injury (Doc. 18-12 ¶ 7); Andresen stated that Plaintiff complained about the double link not being long enough but did not complain about the handcuffs being tight and Andresen was able to get his finger under then handcuffs after they were applied (Doc. 18-13 ¶¶

4-5); and Keon Jackson stated that Plaintiff complained about discomfort in the restraints (Doc. 18-21 ¶ 6).

Plaintiff asserts that he told all escorting Defendants that he had a medical order for large and double handcuffs, he told escorting Defendants that the handcuffs were painful, and he showed them that he had indentations on his wrists after removing his handcuffs.  (Doc. 39 at ¶¶ 2, 8.) Plaintiff also asserts that he was given cream for a pulled muscle on March 19, 2020, as a result of the use of handcuffs on March 16, 2020, by Defendant Nobel.  Although Plaintiff references his own statement regarding the cream for his shoulder, Plaintiff has failed to show any other evidence or medical records establishing that he suffered an injury as a result of the use of regular handcuffs. (*See* Doc. 1-1 at 11.)  Plaintiff has also failed to cite to any evidence that he suffered any permanent injury or any emotional injury as a result of the use of the regular handcuffs with extra links during March and April 2020.  Moreover, beyond the use of regular handcuffs with extra links, Plaintiff makes no attempt in his response brief to show that any officer applied more force than necessary in placing Plaintiff in handcuffs.  *See Hudson*, 503 U.S. at 9.  Plaintiff also does not dispute that he was in handcuffs for a relatively brief period of time.  (*See* Doc. 1-1 at 21) (detailing the alleged times that Plaintiff was restrained in handcuffs); *see also* Docs. 18-7 through 18-13, 18-17, 18-18, 18-21 (generally discussing the procedure to take an inmate to the showers which ranges from approximately one minute to a few minutes if there is a delay in opening cell doors)).

The evidence here is insufficient to meet the first prong of an Eighth Amendment claim. Although Plaintiff has a medical order for large and double cuffs due to his size, there is no evidence that Plaintiff's medical need for such an order is not met by using regular handcuffs with extra links.   The evidence is that Defendants were attempting to resolve the issue with the handcuffs and were working in good faith towards a solution.  The supervisory Defendants stated

that the extra links provided enough length to accommodate the individuals with medical orders, at least with respect to the need to provide the extra length that double cuffing provided. Moreover, there is no evidence that the regular sized handcuffs with extra links would be an obvious cause of pain to Plaintiff. While Plaintiff states that he told every officer that he was in pain, he provides no evidence that this pain was obvious to all escorting officers. Plaintiff has not asserted that he suffered any visible injuries as a result of the handcuffing. While a handcuff may have made an indentation on his wrists, Plaintiff has not claimed a permanent injury from those handcuffs. Further, Plaintiff provides no medical conclusions of a medical professional or medical records to support that using regular handcuffs with extra links instead of large handcuffs and double cuffing constituted deliberate indifference to his medical needs. *See Pevia v. Stouffer*, No. CIV.A. ELH-13-2905, 2015 WL 424717, at *11 (D. Md. Jan. 29, 2015) (finding that the objective component was not met when inmate had a medical order for front cuffing and he was handcuffed from behind).

Even assuming that the objective component was satisfied, Plaintiff has not put forth sufficient facts to establish the subjective component. The evidence is that all escorting officer Defendants were acting under orders from the supervisory Defendants. They have all put forth evidence that they did not intend to cause Plaintiff discomfort, that the handcuffs were only used for a very short time, and that they were careful in applying the handcuffs to make sure they were not too tight. (*See* Docs. 18-7 through 18-13, 18-17, 18-18, 18-21 (generally discussing the procedure to take an inmate to the showers)). Although they may have been informed by Plaintiff that he had a medical order for large and double handcuffs and that he was in discomfort, there is no evidence that they were aware that a substantial risk of serious harm existed from using the regular handcuffs with extra links. Notably, there is no evidence that Plaintiff had any visible

physical injury at the times the handcuffs were applied.  Although Plaintiff argues that he has had a shoulder injury in the past, there is no evidence that he was suffering from a shoulder injury at the time the handcuffs were applied nor is there any evidence that the application of the handcuffs aggravated his shoulder injury.

In response, Plaintiff states that "common sense dictates that it is absurd to believe that an inmate medically ordered to be restrained in 'large' sized cuffs would not suffer pain, restricted blood circulation when placed in regular sized cuffs unless it was to cause unnecessary harm like Plaintiff asserts."  (Doc. 39 ¶ 12.)  Besides pointing to the medical order and the fact that regular handcuffs were smaller in circumference than large handcuffs, Plaintiff offers no facts to support that any individual Defendant acted with the requisite state of mind.

Plaintiff further argues that there is evidence Defendants acted with the requisite intent because they specifically identified him in a memorandum instructing officers to no longer use leg irons and, therefore, they acted with malicious intent to cause him pain when using regular handcuffs with extra links. (Doc. 39 at 4.)  This argument is not clear.  Nevertheless, the evidence clearly shows that the termination of leg irons was due to a concern of inmate safety and that the policy change to regular handcuffs with extra links was applied to everyone.  Moreover, there is no evidence that anyone other than Plaintiff was being restrained with leg irons in this manner. Therefore, the fact that Plaintiff was specifically mentioned in a memorandum prohibiting the use of leg irons for handcuffs does not support a finding that Defendants acted with the requisite mental state when applying the regular handcuffs with extra links.  Plaintiff's argument to the contrary is not persuasive.

Even if Plaintiff meets his burden here to show a constitutional violation, he cannot show that the right was clearly established at the time of Defendants' unlawful conduct.  Because

16

Defendants have raised qualified immunity, Plaintiff must demonstrate that the violation was clearly established at the time the violations occurred in March and April 2020. *Lewis v. City of Edmond*, ---F.4th---, 2022 WL 4282659, at *3 (10th Cir. Sept. 16, 2022). Plaintiff has phrased his rights as the right to be free from the use of regular size handcuffs that would cause unnecessary pain due to the difficulty in applying the new restraints and the right to have officers comply with his medical order by utilizing large handcuffs when being restrained to mitigate "pain and indentions." (Doc. 239 at 6-8.)

The first right asserted by Plaintiff is essentially an assertion of a right to be free from excessive force due to the use of smaller handcuffs. Although this right is not based on his medical order, the Tenth Circuit has recently held (in a case brought by *this* Plaintiff) that a failure to loosen handcuffs or to use regular-sized handcuffs on an inmate who may need large-sized handcuffs does not violate the Eighth Amendment. *See Grissom v. Palm*, No. 21-3194, 2022 WL 3571410, at *7 (10th Cir. Aug. 19, 2022) (citing *Stevenson v. Cordova*, 733 F. App'x 939, 946 (10th Cir. 2018) (unpublished) (finding no authority "in this circuit or otherwise" clearly establishing that an officer violates the Eight Amendment by refusing to loosen a prisoner's handcuffs)). Plaintiff fails to cite any authority that would contradict the Tenth Circuit's recent order. Rather, Plaintiff cites to a Kansas regulation regarding the application of restraints. (Doc. 239 ¶ 6.) While the Kansas regulation discusses that "[n]o restraining device shall be applied in a manner which would cause significant physical pain or undue discomfort," the regulation is a generally applicable state law regarding the use of restraints. K. A. R. § 44-5-106. It does not specifically speak to the use of small and large handcuffs. For the right to be clearly established, the law must be settled so that it was clear that the defendant's use of force was unconstitutional. *Lewis*, 2022 WL 4282659, *4.

Plaintiff further cites to *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001), in support of his position that a violation can be clearly established based on "common sense." (Doc. 39 at 2.) *Giebel* was not an Eighth Amendment excessive force case and the authority it relied on in support of its discussion of "common sense" was reversed by the Supreme Court. *See Giebel,* 244 F.3d at 1189 (citing to *DeBoer v. Pennington*, 206 F.3d 857, 865 (9th Cir. 2000), *cert. granted, judgment vacated sub nom. City of Bellingham v. DeBoer*, 532 U.S. 992 (2001)). Therefore, it is not relevant here. Plaintiff also cites to *Taylor v. Riojas*, 141 S. Ct. 52 (2020), in support of his position that the right was clearly established. Not only was *Taylor* issued after the conduct at issue here, in November 2020, but the facts of the case are also clearly distinguishable. In *Taylor*, the Supreme Court held that the officers violated the plaintiff's Eighth Amendment rights by confining him in a pair of shockingly unsanitary cells. The first cell had "massive amounts of feces" all over and the plaintiff could not eat or drink for four days. *Id.* at 53. The second cell was frigidly cold and equipped with a clogged drain in the floor for the plaintiff's feces. The cell did not have a bunk and the drain overflowed causing the plaintiff to sleep naked in sewage. *Id. Taylor* is not instructive on the use of handcuffs to restrain prisoners.

In the context of an Eighth Amendment excessive force case involving handcuffs, the Tenth Circuit authority "involving a use of force against a prisoner who was restrained involved significantly greater force" than the allegations here. *Stevenson*, 733 F. App'x at 946. In *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996), the Tenth Circuit held that a jury could find prison guards acted maliciously and sadistically by stripping an inmate, placing him in wrist, ankle, and belly chains, picking him up by his elbows and forcing him to run across a gravel yard, then kicking him and yelling racial epithets when he fell. *Id.* at 1439, 1440-41. In *Miller v. Glanz*, 948 F.2d 1562 (10th Cir. 1991), the Tenth Circuit held that allegations that officers kicked, beat, and choked

a prisoner who was handcuffed and his ankles were restrained was sufficient to state an Eighth Amendment claim. *Id.* at 1564, 1567. Here, officers restrained Plaintiff for only a few minutes at a time with regular sized handcuffs instead of large handcuffs. This allegedly violated his medical order which noted that he was to have large handcuffs. Officers attempted to accommodate his medical order for double cuffing by adding extra links to the chain. Plaintiff was restrained for a few minutes using these handcuffs on approximately 34 occasions. There are no medical records which indicate any lasting injury from the handcuffs although Plaintiff does have some evidence that he may have had a muscle pull on a single occasion and that he complained of pain to the escorting officers. The facts in this case are drastically different from the facts in *Mitchell* and *Miller*. The escorting officers, Carter, Alcorn, Woodman, Michels, Eash, Loya, Andresen, Jackson, Nobel, Flowers, Kern, Reinert, and Derringer are entitled to qualified immunity on Plaintiff's refusal to use large handcuffs claim because the law with respect to his Eighth Amendment rights was not clearly established. *See Grissom*, 2022 WL 3571410, at *7; *Marshall v. Wiebe*, No. 16-3014-EFM, 2018 WL 1806760, at *6 (D. Kan. April 17, 2016) (finding no excessive force from the defendant's use of handcuffs even though the plaintiff complained of an elbow injury); *Astorga v. Vick*, No. 15-3191-CM, 2017 WL 1397540, at *4 (D. Kan. April 17, 2017) (finding no Eighth Amendment violation because plaintiff suffered no discernable injury, did not timely complain of pain, and his allegations that defendants forced him into handcuffs and yanked his arms were de minimus).

Next, Plaintiff argues that it was clearly established in March 2020 that Defendants' failure to comply with a medical order by using large and double handcuffs violated Plaintiff's right to be free from deliberate indifference to his serious medical needs. In support of his burden, Plaintiff cites to two cases to show that this right was clearly established in March 2020. Plaintiff first cites

to *Johnson v. City of Ecorse*, 137 F. Supp. 2d 886, 893 (E.D. Mich. 2001), for the proposition that "it is long-established that where the arrestee suffers from a physical ailment that makes handcuffing especially painful, and advises the officers of this condition before tight handcuffs cause the arrestee injury there is a clearly established right to be free of excessively-tight handcuffs." (Doc. 39 at 3.) *Johnson* involved allegations of a Fourth Amendment violation due to excessive force during an arrest. It was not framed as a deliberate indifference claim. In *Stevenson*, 733 F. App'x at 945–46, the Tenth Circuit rejected the plaintiff's attempt to compare the conduct in his case, an Eighth Amendment claim, to the conduct in cases involving a Fourth Amendment claim. *See id.* (the plaintiff "again relies on cases addressing the use of force against an arrestee in circumstances governed by the Fourth rather than the Eighth Amendment...And we have not found an Eighth Amendment case with sufficiently analogous facts, in this circuit or otherwise, that would have put Williams on notice that his inaction amounted to cruel and unusual punishment.") Moreover, even if *Johnson* was on point here, it would not be sufficient to meet Plaintiff's burden of establishing that the violation was clearly established because it is a district court opinion. *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1306 (10th Cir. 2021) ("District court cases lack the precedential weight necessary to clearly establish the law for qualified immunity purposes.")

Plaintiff also cites to *Aswegan v. Bruhl*, 965 F.2d 676, 677 (8th Cir. 1992), for the proposition that a failure to honor doctors' orders and refrain from cuffing the plaintiff's hands behind his back constituted deliberate indifference to medical needs. Plaintiff's representation of the holding in *Aswegan* is not entirely accurate. The Eighth Circuit upheld the jury verdict finding of deliberate indifference based on evidence that the defendant refused the plaintiff access to medical personnel, both defendants repeatedly failed to deliver the plaintiff's medications in a

timely manner, the plaintiff was not to be handcuffed behind his back because of his arthritis, and he was not to be placed in the shower during "shake-downs" because "the humidity made it difficult for him to breathe." *Id.* at 677-78. The facts in *Aswegan* clearly involved far more conduct than handcuffing an inmate in violation of a medical order. Moreover, *Aswegan* was decided by the Eighth Circuit and Plaintiff has not shown any Tenth Circuit authority on point.

The Tenth Circuit has previously held that, in some instances, failing to abide by medical orders with respect to handcuffing can result in a constitutional violation of the right be free from deliberate indifference to serious medical needs. Both *Martin v. Bd. of County Comm's of County of Pueblo*, 909 F.2d 402 (10th Cir.1990) and *Howard v. Dickerson*, 34 F.3d 978, 980–81 (10th Cir. 1994) involved claims under the Fourteenth Amendment as the plaintiffs were arrestees. However, the court finds these cases instructive because the standard for deliberate indifference claims under the Eighth and Fourteenth Amendment are the same. *See Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1262 (10th Cir. 2022). In *Martin*, officers arrested a woman who was in the hospital and wearing a neck brace. The officers insisted on handcuffing her with arms behind her back, despite being told by her doctor that the plaintiff suffered from a fractured neck, had just had surgery, and movement presented a grave risk of injury. Plaintiff also repeatedly complained of pain and officers ignored her request that her hands be in front of her body to avoid injury. *See Martin*, 909 F.2d at 403–05. In *Howard*, the plaintiff was wearing a neck brace and informed officers that she had recently undergone neck surgery and that handcuffing her behind her back would cause injury. Another person present at the scene also advised the officer to only handcuff her hands in front to avoid injury. The officer handcuffed her hands behind her back and later refused her request for a doctor during booking. *See Howard*, 34 F.3d at 979-81. The Tenth Circuit held that both cases stated a claim for deliberate indifference against the officers.

In both cases, the arrestee's visible symptoms or the medical information relayed to officers clearly provided the officers with a basis to know that their conduct created a substantial risk of harm but they recklessly chose to disregard that risk.  Here, that is not the case.  Although the escorting Defendants were all told about Plaintiff's medical order, there are no facts to suggest that the escorting officers knew that their conduct created a substantial risk of harm to Plaintiff, but they recklessly chose to disregard the risk.  Plaintiff has not provided any facts to show he had any physical symptoms such as a dislocated shoulder or provided medical information that alerted the escorting officers to a substantial risk of harm from using regular handcuffs with extra links.

Therefore, the court finds that Plaintiff has failed to show his Eighth Amendment rights with respect to this claim were clearly established and the escorting Defendants are entitled to qualified immunity.

### 4.    Supervisor Liability

With respect to the supervisory Defendants, Plaintiff has alleged that they violated his Eighth Amendment rights to be free from excessive force and that they acted with deliberate indifference to his medical needs in adopting the new policy on handcuffs even though he had a medical order for large and double cuffing for several years.  (Doc. 1 at 10.)

As discussed herein, a supervisor is liable if he creates, promulgates, or implements a policy that injures a plaintiff's constitutional rights.  *George*, 32 F.4th at 1255.  There must be an affirmative link between the supervisor and the constitutional injury.  To show that link, Plaintiff must prove: "(1) the defendant promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Id.* (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199–200 (10th Cir. 2010)).  Here, the supervisory

Defendants, Schnurr, VanHoose, Stiggins, Bell, and Ashford, do not dispute that they either created, implemented, or possessed responsibility for the change in the handcuff policy.  However, they argue that they are entitled to qualified immunity because they did not act with the requisite state of mind or, alternatively, that the right identified by Plaintiff was not clearly established.

The court first notes that the supervisory Defendants cannot be held liable in their individual capacities for implementing policies or for the actions of the escorting "officers under a theory of supervisory liability, when there was no violation of [plaintiff's] constitutional rights." *Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009).  Here, the court determined that there was no Eighth Amendment violation by the escorting officers.  Therefore, they are entitled to summary judgment on that basis.

Moreover, as with the escorting officers, Plaintiff has failed to show that the supervisory Defendants acted with the subjective intent required.  The evidence shows that the supervisory Defendants believed that the regular handcuffs with the extra links were sufficient to provide enough length for the inmates who had a medical order for the double handcuffs.  Although Plaintiff's order also included that he be restrained with "large" handcuffs, Plaintiff has not shown that the supervisory Defendants knew that their conduct in adopting the policy created a substantial risk of harm to Plaintiff, but they recklessly chose to disregard the risk.  These Defendants all stated that they did not act with intent to harm Plaintiff and there is no evidence that Plaintiff suffered any permanent physical injury or that the handcuffing exacerbated an existing physical injury.  There is no evidence that the application of the regular handcuffs resulted in anything more than de minimus injury.  Moreover, there are no facts to support that any Defendant acted with a malicious, sadistic intent instead of in a good-faith effort to maintain discipline and safety.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Finally, under either an excessive force or deliberate indifference to medical needs standard, Plaintiff has failed to show that his rights were clearly established as discussed herein. Therefore, the supervisory Defendants are entitled to summary judgment.

### 5.    Retaliation

Finally, Plaintiff brings a claim of retaliation against Schnurr, VanHoose, Stiggins, Bell, and Ashford.  Plaintiff asserts that these supervisory Defendants implemented the policy change regarding handcuffs and revoked his daily showers because of his EDCF complaint.  Defendants move for summary judgment on the basis that Plaintiff cannot show that Defendants' actions were substantially motivated as a response to Plaintiff's constitutionally protected activity.  Defendants also move for summary judgment on Plaintiff's retaliation claim regarding the daily showers on the basis that Plaintiff failed to administratively exhaust that issue.

Exhaustion.  An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies."  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation

omitted).   The Tenth Circuit has also held that the PLRA requires that "a prisoner's claim be administratively exhausted prior to the filing of the action in court, rather than during the pendency of that action."  *Price v. Shinn*, 178 F. App'x 803, 805 (10th Cir. 2006); *see also Porter*, 534 U.S. at 523–25; *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

For Kansas state prisoners, the administrative remedies require an inmate to first seek an informal resolution with prison personnel who work with the prisoner on a daily basis.  K.A.R. § 44–15–101(b).  If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections.  K.A.R. § 44–15–101(d).  The procedure to follow at each level is described in detail in K.A.R. § 44–15–102.

Here, it is undisputed that Plaintiff filed his complaint prior to completing the grievance process with respect to his shower claim.  Plaintiff filed suit on June 15, 2020, only four days after filing his initial grievance and the grievance process was not completed until August 12, 2020.  As stated by the Tenth Circuit, the PLRA requires that a prisoner complete the process prior to initiating suit and not during his suit.  *Price*, 178 F. App'x at 805.  "Since the PLRA makes exhaustion a precondition to filing a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency."  *Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012).  Although Plaintiff was aware of Defendants' argument regarding exhaustion, he failed to offer a valid excuse as to why he filed his claim regarding the showers prematurely.  Therefore, his retaliation claim pertaining to the revocation of his daily showers is subject to dismissal for failing to exhaust prior to bringing suit.  Moreover, Plaintiff's retaliation claim fails on the merits as discussed herein.

<u>Analysis of Retaliation claim.</u>   "It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (brackets and internal quotation marks omitted).   Government retaliation against a plaintiff for exercising his First Amendment rights may be shown by proving the following elements: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Defendants assert that Plaintiff cannot establish the third element, that their actions were substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct. In support, Defendants argue that they had no knowledge or recollection of the EDCF action and that Plaintiff has only relied on temporal proximity as evidence of their motivation which is not sufficient to establish causation.   Moreover, Defendants argue that the evidence shows that Plaintiff never had a medical order for daily showers and that the handcuff change was due to the damage being done by double cuffing.   In response to Defendants' arguments regarding retaliation, Plaintiff argues that he has shown that both Schnurr and Ashford had knowledge of the EDCF action.   (Doc. 39 at 1.)   Plaintiff, however, fails to address Defendants' argument that evidence of temporal proximity by itself is not sufficient to establish that the officials' actions were substantially motivated as a response to Plaintiff's protected activity.

"An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of [his] constitutional rights." *Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010) (emphasis in original) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

The Tenth Circuit has "consistently held that temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim." *Id.* (citing *Friedman v. Kennard*, 248 F. App'x. 918, 922 (10th Cir. 2007) (citing cases)).  If so, "litigious prisoners could claim retaliation over every perceived slight and resist summary judgment simply by pointing to their litigiousness." *Id.*

Here, Plaintiff alleged in his complaint that the handcuff policy change and the revocation of his daily showers was taken in retaliation for his EDCF suit.  Plaintiff has not pointed to any specific facts showing that the actions were taken in retaliation for his lawsuit.  Plaintiff cannot rely on temporal proximity alone as this is not sufficient to establish the causal nexus required for a retaliation claim.  *Id.*  (*see also Leek v. Miller*, 698 F. App'x 922, 925–26 (10th Cir. 2017) (affirming dismissal of a claim of retaliation based only on the timing of the conduct to the protected activity)).   Therefore, even if the supervisory Defendants knew about the ongoing litigation regarding the EDCF, Plaintiff has failed to establish that their actions were substantially motivated by Plaintiff's protected activity.

Defendants are entitled to summary judgment on Plaintiff's claim of retaliation.

## IV.     Conclusion

Defendants' motion for summary judgment (Doc. 31) is GRANTED.

IT IS SO ORDERED.  Dated this 28th day of September 2022.

_  s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE